THE CLEVELAND ELECTRIC ILLUMINATING COMPANY, APPELLANT, *v.* SCAPELL ET AL., APPELLEES.

[Cite as Cleveland Electric Illuminating v. Scapell (1975), 44 Ohio App. 2d 13.]

(No. 33428—Decided March 13, 1975.)

*Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buchmann. Mr. James H. Woodring* and *Mr. Donald H. Hauser,* for appellant.

*Messrs. Kelley, McCann & Livingstone,* for appellee Board of Park Commissioners.

*Messrs. Kelley, McCann & Livingstone* and *Mr. Stephen M. O'Bryan,* for appellee City of Independence.

*Mr. William J. Brown,* Attorney General, *Mr. Larry R. Zingarelli, Messrs. Knepper, White, Richards & Miller* and *Mr. Richard A. Frye,* for appellee State of Ohio.

DAY, J.  The Cleveland Electric Illuminating Company (CEI) filed Case No. 803,259 in Probate Court on March 30, 1973, to appropriate land of Mr. and Mrs. Frank Scapell located in Brecksville, Ohio (see Transcript of Docket Entries in Record). CEI claimed that it had to obtain an easement over the Scapell's property in order to make way for construction of its proposed Valley-Harding transmission lines.

The City of Independence brought Case No. 919,280 in Common Pleas Court on July 17, 1973, to enjoin construction of the Valley-Harding Line (see Transcript of Docket and Journal Entries). CEI had begun construction of power lines in a park area of Independence (R. 1700-01).

The City of Brecksville and The Ohio Department of Natural Resources moved to intervene on the side of plaintiff, City of Independence, in the injunction action (see Transcript of Docket and Journal Entries).

On August 27, 1973, the Probate Court ordered the injunction action pending in Common Pleas Court consolidated with the appropriation proceeding pending in its court (R. 3-4), and permitted intervention by Brecksville and the Department of Natural Resources (R. 6, 9-10).  A trial of all the issues was had over a thirteen-day period. On January 21, 1974, Judge Locher rendered the Court's opinion dismissing the appropriation action and granting the injunction sought by the City of Independence and the intervenors with respect to that part of the proposed Valley-Harding Line which was to traverse a proposed park location in the Cuyahoga River Valley.

In the eminent domain action, the trial court held that the Board of Directors of CEI abused its discretion in determining the necessity for appropriating the Scapell's property for its transmission lines when the Company

could have constructed its power lines along other alternative routes that would not violate the area where combined local, state, and federal agencies were planning a park (see Opinion, pp. 9-10).

In the injunction action, the trial court made a previously granted temporary restraining order premanent "within the boundaries of the Federal-State-Metropolitan Park District project" (Opinion, p. 11) for the reason that the transmission lines are not "consonant with the welfare of the general public" (Opinion, p. 6) as required by Ohio Revised Code 4905.65(B).

CEI appeals the judgment of the Probate Court, assigning three errors:

"I. The Court Below Erred In Case No. 803,259 In Holding That The Company Abused Its Discretion in Determining The Necessity For The Appropriation Of The Scapells' Property.

"II. The Court Below Erred In Case No. 919,280 In Failing To Hold That The Company's Proposed Valley-Harding Line Met All The Requirements of Revised Code Section 4905.65.

"III. The Court Below Erred In Holding That The Illuminating Company Was Prohibited From Constructing Its Proposed Valley-Harding Line Solely Because It Might Be Inconsistent With A Possible Future Public Use, Such A Prohibition Being Unconstitutional In The Circumstances."

*Assignment of Error No. I:*

"The Court Below Erred In Case No. 803,259 In Holding That The Company Abused Its Discretion In Determining The Necessity For The Appropriation Of The Scapells' Property."

An abuse of discretion is not a circumstance which lends itself to easy determination. The definitions of abuse swing wildly over a range of statements. Abuse, for example, has been said on the one hand, to imply "perversity of will, passion, prejudice, partiality or moral delinquency", Hogeboom, J., dissenting in *The People* v. *The N. Y. C. R. R. Co.* (1864), 29 N. Y. 418 at 431; " 'a discretion exer-

cised to an end or purpose not justified by, and clearly against reason and evidence' ", *Trimmer, et al.,* v. *State, et al.* (1930), 142 Okla. 278, 281; "a view or action 'that no conscientious judge, acting intelligently, could honestly have taken' ", *Long* v. *George* (1937), 296 Mass. 574, 579, and on the other hand not to exist when the Court displays "a discretion in the sense of being discreet, circumspect, prudent, and exercising cautious judgment", *Murray* v. *Buell* (1889), 74 Wisc. 14, 18. Certain it is that the term "abuse of discretion" in other contexts has been held to mean more than simply an honest mistake in judgment. See *Alliance* v. *Joyce* (1892), 49 Ohio St. 7, 22; cf. *Steiner* v. *Custer* (1940), 137 Ohio St. 448, 451. And, the Board of Directors of CEI, in exercising the judgment to appropriate, having been clothed with state power in this particular, is presumed to have acted regularly and in a lawful manner until the contrary is shown—that is the essential meaning of the statute establishing *prima facie* evidence of necessity when the appropriating agency has declared it. See Ohio Revised Code, §163.09(B).

Without adopting an extreme definition of abuse of discretion, it seems to us enough to determine the issue if the evidence shows the Board of Directors made a reasoned and good faith effort to exercise the discretion given it by Ohio Revised Code. Whether the product of that action is the best conceivable decision or whether we, or the court below, agree with it, or would have made a different judgment on the same evidence, is beside the point.

The record in this case shows the Board of Directors, obviously through surrogates, did make a reasoned, good faith effort to determine the necessity for the appropriation before declaring it. This is made manifest by the evidence that anticipated load increases require an increased power supply and that additional facilities are necessary for that (Tr. 109-111, 171-172, 175-176). Apparent reliance on these facts coupled with reasons for choosing the Valley-Harding Line route as against alternate routes, provide the raw material for a reasoned judgment.

The reasons for choice included cost, disruption of

homes, land values (Tr. 246), the possibilities for a two-source power supply (Tr. 247, 250), supply reliability (Tr. 247), relative burdens on the communities involved (Tr. 248-249), the use of existing corridors represented by railroad lines and highways (Tr. 246, 249-250), the avoidance of congested areas (Tr. 250), the economy of a short route (Tr. 250), esthetics (Tr. 251), safety (Tr. 251), a study and recommendation by an independent consulting firm (Tr. 252-254), environmental considerations (Tr. 255-256), and the cost versus benefit of underground lines (Tr. 256-258, 266-267.[1] CEI also made a proffer of opinion evidence on the compatibility of the line with ''any state or local park'' (Tr. 270). The expert gave his opinion, in answer to a hypothetical question, that the Valley-Harding route was the best for the contemplated line (Tr. 271-274). In our view the record, as postured, provides no basis for a conclusion by reasonable minds that the CEI Board of Directors did not make the reasoned judgment required by the statute. If we are correct, the first assignment of error is valid unless the evidence will support bad faith.

Bad faith was suggested in oral argument because admittedly CEI proceeded to expend extensive funds on the line construction after knowledge that it would cross projected park land. The company response to this was that the length of time which construction requires and pressure to get needed facilities for anticipated power demands ordained speed. Apart from this there is no suggestion of bad faith. We hold there was none and find the first assign-of error well taken.

*Assignment of Error No. II:*

''The Court Below Erred in Case No. 919,280 In Failing To Hold That The Company's Proposed Valley-Harding Line Met All The Requirements Of Revised Code Section 4905.65.''

Ohio Revised Code, §4905.65 in pertinent part provides:

---

[1]Tr. 267 includes a proffer of evidence with respect to the source of funds for the installation of facilities. The proferred testimony indicates that the money for installation of added electrical facilities comes from CEI's customers.

". . . (B) To the extent permitted by existing law a local regulation may reasonably restrict the construction, location, or use of a public utility facility, unless the public utility facility:

"(1) Is necessary for the service, convenience, or welfare of the public served by the public utility in one or more political subdivisions other than the political subdivision adopting the local regulation; and

"(2) Is to be constructed in accordance wtih generally accepted safety standards; and

"(3) Does not unreasonably affect the welfare of the general public . . . ."

The record amply supports the existence of the requirements specified in sub-paragraphs B(1) and (2) of the statute. Indeed, there seems little serious contest on those points. Whether the construction of the proposed facility will "unreasonably affect the welfare of the general public" poses a much closer question. And that question is a factual one steeped in conflicting evidence. Under such circumstances, the question must be resolved as the trier of the facts decided it unless a review of the record demonstrates that no reasonable mind could have reached the trial court's conclusion on the evidence before it. The trial court read the "necessity" and "unreasonable" factors in subparagraphs (1) and (3) in relation to the proposed route and decided that if one or more of the alternative routes were of superior feasibility to the CEI choice, "then the 'necessity' for this particular line is brought into question" (Opinion, p. 5). We do not interpret the "necessity" element here as justifying a comparative analysis of the several possible routes. There is ample showing of need for a new power line. Comparison is a factor in "necessity" only after a clear need is demonstrated and can be satisfied as well by one route as another. We cannot say the evidence establishes any such equation. We confine our decision to the issue whether the welfare of the general public is unreasonably affected.

The record discloses that a variety of expert witnesses concluded that the effects of power conduits such as the Val-

ley-Harding Line (CEI proposed route) were antagonistic to park purposes (Tr. 398-399) and degrading to the Valley (Tr. 338-339),[2] imposing both unsightliness and limitations on park use (Tr. 566-567) with deleterious ecological consequences (Tr. 824-826) stemming in part from the significant removal of forest lands necessary to provide the line right-of-way (Tr. 829). Another conclusion was that the removal of trees from the valley flood plain would seriously compromise its usefulness as a flood plain study area (Tr. 829). There was, of course, conflicting expert opinion (p. e., Tr. 2521-2542). However, that situation provides the classic occasion for the trier of fact to resolve the differences. Unless a reviewing court is prepared to say that no reasonable mind could have concluded on the evidence as the trial court did, the decision below must not be disturbed.

The evidence lends itself reasonably to the conflict resolution adopted by the trial court. Under such circumstances it is not appropriate for us, the reviewing tribunal, to interfere with the trial court's decision.

The second assignment of error is not well taken.

*Assignment of Error No. III:*

"The Court Below Erred in Holding That The Illuminating Company Was Prohibited From Constructing Its Proposed Valley-Harding Line Solely Because It Might Be Inconsistent With A Possible Future Public Use, Such A Prohibition Being Unconstitutional In The Circumstances."

The appellant, CEI, relies principally upon two cases to support this assignment of error. These are *The State, ex rel. Sun Oil Co.,* v. *City of Euclid, et al.* (1955), 164 Ohio St. 265 and *Henle* v. *City of Euclid, et al.* (1954), 97 Ohio App. 258. The principles in which appellant finds comfort are these—a municipal corporation has no authority to use the appropriation power to acquire title to property for possible future use, *State, ex rel. Sun Oil Co.,* v. *City of Euclid, et al., supra* at 271-272; nor can a city "freeze"

---

[2]A considerable portion of the record was devoted to the Valley's historical value and significance (Tr. 570-595).

property using zoning restrictions to prevent an owner's benefical use until it gets around to appropriating the property for a future public use, *Henle* v. *City of Euclid, supra* at pp. 264, 268.

CEI's reliance on these cases is misplaced for two reasons. First, the property of CEI is not being restricted or frozen either by an eminent domain procedure or a zoning regulation. Second, the limitation imposed by the court below is mainly based on a conception which assesses CEI's proposed line in terms of its effect on the "public welfare", Ohio Revised Code, §4905.65(B)(3). An analysis of the evidence supporting this assessment demonstrates that it is one that reasonable minds might adopt (see II above). For these reasons the third assignment of error is without merit.

The order of the trial court enjoining the construction of the line is affirmed.

*Judgment affirmed.*

WASSERMAN, J., concurs.

WASSERMAN, J., retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution.

MANOS, J., dissenting. I agree that the court below erred in holding that C. E. I. abused its discretion by appropriating the Scapell property. I must, however, respectfully dissent to the affirmance of the trial court's decision that the proposed route will *unreasonably* affect the general welfare.

In my opinion, the effect upon the general welfare must be determined in regard to the area as it now exists. There is no contention that the transmission line will affect the general welfare unreasonably absent the existence of the proposed park. The future location of the park should not be allowed to interfere with C. E. I's immediate need for a new transmission line.

The appellees argue that the erection of the Valley-

Harding Line is itself only a possibility because it is contingent upon the future appropriation of State land by C. E. I. However, the question of which one of several appropriating agencies has a paramount interest in this land is not before this court.

Moreover, upon the park becoming a reality, the evidence establishes that the effect of the power lines on the park would not be unreasonable. It is undeniable that such lines are not aesthetically pleasing; however, where, as in the present case, the power company has made every effort to minimize the visual effect of the lines, mere aesthetic considerations should not bar construction. As stated by this court:

"We can appreciate the desire to place the transmission lines underground and the wish to beautify the area. Unsightly steel poles and towers have become almost commonplace due to the great demand for electric energy. This demand will increase in the future because of the need for heat in homes. The problem, however, is not one for the courts, except in rare instances. The request for change in the law and especially as to R. C. 4905.65(C) should be directed to the legislature." *City of Rocky River* v. *The Cleveland Electric Illuminating Company*, Ct. App. 32640 & 32660 (Dec. 27, 1973).

The present action is not one of those "rare instances" referred to in the *Rocky River* decision. The vast majority of the park will be far removed from the lines. For most of the two miles traversed by the line, the wires will be screened. With the exception of landscape architect Jot Carpenter, the expert witnesses agreed that the visual effect of the wires would be a minimal, not an unreasonable interference with the general public's use of the park. Mr. Carpenter himself stated that the wires would not destroy the park, although they might require "that another kind of park be considered" (Tr. 762). This testimony, based entirely upon aesthetics, is insufficient to establish an unreasonable effect upon the welfare of the general public. I would therefore reverse and enter final judgment for the appellant.