OPINION
{¶ 1} Defendant-appellant, Octa Retail, LLC, appeals an eminent domain decision from the Fayette County Court of Common Pleas. We reverse and remand.
 {¶ 2} On April 14, 1997, the village of Octa enacted Ordinance No. 97-003, authorizing the implementation of an urban renewal process. On May 13, 2002, the village enacted an urban renewal plan to relocate and construct a fully improved West Lancaster Road. The plan authorized the village to appropriate any real property via eminent domain to *Page 2 
construct the road "to cure blight within the project area."
 {¶ 3} Appellant is the owner of six parcels of approximately 3.8 acres of real property located within the northwest quadrant of the US-35 and I-71 interchange in the village. The parcels were held by separate deeds and had various uses.[1] To construct the road, the village filed a complaint to appropriate the entirety of one parcel and a portion of two other parcels. Pursuant to R.C. 163.06, the village deposited $132,500 with the clerk of courts as the value of the property appropriated. In its answer, appellant objected to the appropriation, arguing that the village was not authorized to appropriate the property and that an excessive amount of property was being appropriated. Appellant filed a motion to dismiss, a motion for preliminary and permanent injunction, and a motion for hearing to determine the necessity of the take, all of which were denied by the trial court. Following a jury trial, the jury assessed the compensation to be paid for the property in the amount of $132,500 for the appropriation of the property and $5,000 for the damage to the residue.[2] Appellant timely appeals, raising three assignments of error. To provide clarity, we will address appellant's assignments of error out of order.
 {¶ 4} Assignment of Error No. 2:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT OCTA RETAIL LLC BY FAILING TO DISMISS THE APPROPRIATION CASE WHEN IT LACKED SUBJECT MATTER JURISDICTION."
 {¶ 6} In its second assignment of error, appellant claims that the village did not follow the proper procedure in appropriating the property and, as a result, the trial court erred by *Page 3 
failing to dismiss the appropriation case. Appellant urges that two appropriation procedures are described in the Revised Code: "quick takings" pursuant to Article I, Section 19 of the Ohio Constitution and R.C. 163.06(B); and a separate procedure for appropriating property for the purpose of curing a blighted area. See, generally, R.C. Chapter 163. Appellant refers to the village's resolution, which states that the property is being appropriated to "cure blight within the project area." Appellant argues that since the resolution stated that the property was appropriated under the urban renewal plan, the property was not for the purpose of making or repairing roads as authorized by the "quick take" provision in R.C. 163.06(B). As a result, appellant argues that the village failed to follow the correct takings procedure.
 {¶ 7} In opposition, the village argues that since it appropriated the property to construct or repair a public road, the appropriation was an authorized "quick take" pursuant to R.C. 163.06(B).
 {¶ 8} Appellant correctly identifies that various procedures are available to public agencies when appropriating property. Section 19, Article I, Ohio Constitution provides that private property may be taken immediately by an agency when used "for the purpose of making or repairing roads, which shall be open to the public, without charge." In such cases, compensation may be paid to the owner after the agency takes possession. "Private property may be taken for the purpose of making or repairing roads without first either compensating the owner or securing such compensation be made, provided compensation is subsequently determined." 38 Ohio Jurisprudence 3d (2003) 317, Eminent Domain, Section 246, citing Cassady v. City of Columbus (1972),31 Ohio App. 2d 100. In all other cases where private property is taken for public use, compensation must first be assessed by a jury and paid to the owner in that amount or secured by a deposit before the agency takes possession. Id.
 {¶ 9} Further, R.C. 163.06(B) sets forth another "quick take" procedure that allows an *Page 4 
agency to take immediate possession of property after making a deposit of the assessed value of the property with the court. Like the constitutional provision, this "quick take" procedure is only available if the appropriated property is used "for the purpose of making or repairing roads which shall be open to the public, without charge, or for the purpose of implementing rail service under Chapter 4981."
 {¶ 10} Accordingly, the initial matter for determination concerns which procedure the village was required to follow.
 {¶ 11} A municipality takes written action through its ordinances and resolutions. 21 Ohio Jurisprudence 3d (2001) 169, Counties, Section 699.[3] R.C. 719.04 provides that a "legislative authority of a municipal corporation shall, whenever it is deemed necessary to appropriate property, pass a resolution declaring such intent, defining the purpose of the appropriation, and setting forth a pertinent description of the land and the estate or interest therein desired to be appropriated." Similarly, R.C. 163.02(D)(2) requires that the "instrument by which an agency acquires real property pursuant to this section shall include * * * [a] statement of the purpose of the appropriation as provided with the appropriation petition."
 {¶ 12} "Municipalities are allowed to appropriate private land for public use, but this power is not absolute and can be exerted only when procedures set forth in relevant statutes are strictly followed."Springfield v. Gross, 164 Ohio App.3d 1, 2005-Ohio-5527, ¶ 12. "[T]he power conferred upon a municipal corporation to take private property for public use must be strictly followed." City of Cincinnati v.Vester (1930), 281 U.S. 439, 448, 50 S.Ct. 360. "It must be deemed to apply, according to its express terms, to every appropriation of private property by a municipality." Id. at 447. *Page 5 
 {¶ 13} The resolution in this case states, in pertinent part:
 {¶ 14} "RESOLUTION ENACTING URBAN RENEWAL PLAN NO. 2002-013
 {¶ 15} "WHEREAS, the Mayor/Urban Renewal Director has reported to the Village Council that there exists blight within the Village and further that recommendations were contained in his report to cure said blight; and
 {¶ 16} "WHEREAS, after due consideration of the report, the Village desires to adopt the plan as an urban renewal project; and
 {¶ 17} "WHEREAS, the project is necessary to cure blight in the economically depressed areas of the Village.
 {¶ 18} "NOW, THEREFORE, BE IT RESOLVED BY THE VILLAGE COUNCIL THAT:
 {¶ 19} "* * *
 {¶ 20} "2. That the Mayor/Urban Renewal Director shall in furtherance of the plan do the following:
 {¶ 21} "a. Contract with Fayette County to construct a fully improved relocated West Lancaster Road.
 {¶ 22} "b. Take action to appropriate [sic] eminent domain real property necessary to construct the road on which, in his opinion, is necessary to cure blight within the project area."
 {¶ 23} The Ohio Constitution and Revised Code authorize a municipality to appropriate private property via the "quick take" procedure in limited situations.[4] R.C. 719.04 further mandates that, when appropriating property, a municipality must pass a resolution *Page 6 
and that resolution must specifically state the purpose for the appropriation.[5] Due to the nature of eminent domain proceedings, the resolution must be strictly construed. The stated purpose included in the resolution determines the nature of the taking and the applicable procedure that must be followed. In order to appropriate property via "quick take," the resolution must explicitly demonstrate that the agency is proceeding pursuant to this enumerated authority.
 {¶ 24} In this case, the village urges that it was appropriating the property under one of the enumerated "quick take" situations because it was "making or repairing" a road. However, the resolution passed by the village stated that the property was being appropriated to construct an improved West Lancaster Road "to cure blight within the project area" in furtherance of the village's urban renewal plan. The village makes no mention of R.C. 163.06(B) or that the property is being appropriated for the "purpose of making and repairing roads which shall be open to the pubic."
 {¶ 25} In hindsight, the ultimate result the village wished to achieve may have been to simply relocate the road, but the resolution must be strictly limited to its stated purpose. If the village wished to exercise its power to "quick take" property, it is obligated to demonstrate that intent.
 {¶ 26} Based on the language of the resolution, the village wished to relocate the road in furtherance of its developing urban renewal plan and use funds allocated under the plan to finance the relocation. Further, the resolution is silent regarding any exigent circumstances for rebuilding the road for which the Ohio Constitution specifically authorizes the "quick take" *Page 7 
procedure. Accordingly, based on the resolution, the village must comply with the appropriation procedures to cure blight and cannot use the "quick take" appropriation procedures.[6]
 {¶ 27} The village did not comply with the proper procedure. Stating in the resolution that the road was being relocated in furtherance of the urban renewal plan, but proceeding via the R.C. 163.06(B) "quick take" procedure, the village deposited the assessed value of the property with the court and immediately took possession of the property before a jury trial was held. This was not the proper appropriation procedure.
 {¶ 28} Appellant's second assignment of error is sustained.
 {¶ 29} Assignment of Error No. 1:
 {¶ 30} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT OCTA RETAIL LLC BY PERMITTING APPELLEE VILLAGE OF OCTA'S APPRAISER TO TESTIFY WHEN THE APPRAISER FAILED TO BASE HIS OPINION ON THE DIFFERENCE BETWEEN THE PRE-APPROPRIATION FAIR MARKET VALUE OF THE ENTIRE PROPERTY AND THE POST APPROPRIATION [sic] FAIR MARKET VALUE OF THE REMAINDER OF THE RESIDUE OF THE PROPERTY."
 {¶ 31} At trial, the village's appraisal expert testified that land taken by the village was valued at $132,500. The appraiser testified that there was no damage to the residue. In the first assignment of error, appellant argues the testimony of the village's appraiser at trial was improper and the trial court erred by allowing the testimony because the appraiser's valuation method was contrary to law. The village argues that the testimony was proper because the *Page 8 
appraiser "had valued the property that was taken and found no damage to the residue and thus did not need to do a before or after value on the residue as the tracts were still of sufficient size and usefulness that they did not have any residual damage."
 {¶ 32} Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. State v. Hymore (1967),9 Ohio St.2d 122, 128. Absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. State v. Martin (1985), 19 Ohio St.3d 122, 129. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 33} It is "improper for a witness to state his opinion of the amount of damages arising from an appropriation of property without giving an opinion as to the value of the property before and after the appropriation. Masheter v. Kebe (1976), 34 Ohio St.2d 32, 26. InProctor v. French Hardware, Inc., Fayette App. No. CA2002-06-010, 2003-Ohio-4244, this court held that "[i]n a partial taking, a property owner is entitled to compensation for property taken and `damages for injury to the property which remains after the taking, i.e., the residue.'" Id. at ¶ 7, citing City of Norwood v. Forest ConvertingCo. (1984), 16 Ohio App.3d 411. Damage to the residue is measured by the difference between the pre-appropriation and post-appropriation fair market value to the residue. Hurst v. Starr (1992), 79 Ohio App.3d 757,763.
 {¶ 34} The village's appraiser testified that his valuation was based exclusively on the value of the land taken. Further, he admitted he did not conduct a pre-appropriation and post-appropriation appraisal. After a review of the record, we find the testimony of the village's appraiser was inappropriate. A residue clearly exists in this case as the village did not take the entirety of all three parcels and the appraiser did not conduct his valuation as *Page 9 
required by law.[7] Accordingly, the trial court abused its discretion by allowing the appraiser's testimony.
 {¶ 35} Appellant's first assignment of error is sustained.
 {¶ 36} Assignment of Error No. 3:
 {¶ 37} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT OCTA RETAIL BY FAILING TO HOLD A HEARING WHEN OCTA RETAIL'S ANSWER SPECIFICALLY DENIED THE RIGHT AND THE NECESSITY OF THE APPROPRIATION AND BY OVERRULING OCTA RETAIL'S MOTION FOR HEARING TO DETERMINE THE NECESSITY OF THE TAKE."
 {¶ 38} Appellant argues in its third assignment of error that the trial court erred by denying its motion for a hearing to determine the necessity of the take when appellant's answer to the complaint specifically denied the right and necessity of the appropriation. Like its argument under the second assignment of error, the village argues that it is exempt from the hearing requirement because it proceeded via a "quick take" appropriation.
 {¶ 39} During an appropriation proceeding, R.C. 163.09(B)(1) mandates, "[w]hen an answer is filed * * * relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied in the manner provided in that section, the court shall set a day, not less than five or more than fifteen days from the date the answer was filed, to hear those matters."
 {¶ 40} Having found in our previous discussion that the village did not pursue a "quick take" method of appropriation, the trial court was required to hear the matters denied by appellant in its answer within five to 15 days after the answer's filing. Further, appellant *Page 10 
questioned the amount of property appropriated, arguing that the portion appropriated was excessive. Since the trial court did not hold this mandatory hearing, appellant's third assignment of error is sustained.
 {¶ 41} The current state of the subject property is similar to the situation in Cassady v. City of Columbus, 31 Ohio App.2d 100. InCassady, the city of Columbus used a "quick take" proceeding to appropriate a sewer easement across the plaintiffs' property. Id. at 101. The city deposited the value of the property with the clerk of courts and immediately took possession of the property. Id. The plaintiffs withdrew the deposited sum shortly thereafter.[8] Id. at 101. The plaintiffs filed suit against the city, challenging the appropriation. Id. Similar to the case at bar, the court found that the city's proceedings were improper, but the property had already been appropriated and the city already constructed improvements thereon. Id.
 {¶ 42} The Cassady court held, "[a]t the time of the physical taking of their property by the city, plaintiffs, by their withdrawal and acceptance of the deposit, had been at least partially compensated in money for the property taken. Whether such compensation so paid constitutes full compensation within the contemplation of the constitution can only be ascertained when the jury returns its verdict assessing compensation. Under such circumstances, plaintiffs may not maintain a separate action in trespass against the defendant city." Id. at 106.
 {¶ 43} The property at issue in the case at bar was similarly appropriated, appellant did not file for an injunction, and the village has already constructed the newly relocated West Lancaster Road. On remand, the trial court must first hold a R.C. 163.09(B) hearing, addressing the necessity of the take. This proceeding is limited to a determination of *Page 11 
whether the entire appropriation was necessary; specifically whether the amount taken was excessive. Further, consistent with Cassady, a jury trial must be held to determine any damage from the appropriation based upon the necessity hearing. This trial must also address the amount of damage to the residue, using correct appraisal methodology.
 {¶ 44} Judgment reversed and this cause remanded to the trial court for further proceedings consistent with this opinion.
WALSH, P.J., and YOUNG, J., concur.
[1] Situated on the property is a bar, an apartment building and an adult bookstore. The bar was not in use at the time due to a fire that had consumed the building.
[2] At trial, the village's appraiser testified that there was no damage to the residue. In opposition, appellant's appraiser testified that the residue was damaged in the amount of $335,975. We are unable to discern the basis for the jury's award.
[3] We also recognize that municipalities can also take action, not required by ordinance or resolution, via motion. 21 Ohio Jurisprudence (2001) 3d 169, Counties, Section 699. The revised code requires a municipality to pass a resolution when appropriating property.
[4] Section 19, Article 1, Ohio Constitution states in full, "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."
[5] We note the case of Caldwell v. City of Carthage (1892),49 Ohio St. 334, and its progeny. In that case, that Ohio Supreme Court held that a municipality is not required to pass a preliminary resolution when condemning for "opening, extending, straightening, [sic] or widening a street." Similar language is included in R.C. 719.01(A). This principle is inapplicable to the case at bar because the appropriation at issue is to build an entirely relocated West Lancaster Road, not simply "open, extend, straighten, widen, or change the grade of" the preexisting road on the same site.
[6] This assignment of error ultimately turns upon the purpose included in the village's resolution. This court's inquiry is limited to reviewing only the village's stated purpose for the appropriation in the resolution. If the village's resolution stated that it was appropriating the property pursuant to R.C. 163.06(B) to "make or repair" West Lancaster Road "which shall be open to the public, without charge," it could have followed the "quick take" protocol. By stating that the purpose was "to cure blight" in furtherance of the village's urban renewal plan, which we must strictly construe, the village is required to follow the alternative appropriation procedure.
[7] In its brief, the village attempts to implicate the "unity of use" doctrine, urging that the valuation of only three parcels owned by appellant is at issue and a valuation considering the three unaffected parcels would be in error. This issue is irrelevant and moot in light of our analysis of the instant assignment of error.
[8] R.C. 163.06(C) provides that "[a]ny time after [a] deposit is made by the public agency the owner may apply to the court to withdraw the deposit, and such withdrawal shall in no way interfere with the action except that the sum so withdrawn shall be deducted from the sum of the final verdict or award." *Page 1