[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Doner v. Zehringer*, Slip Opinion No. 2014-Ohio-2102.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2102

THE STATE EX REL. DONER ET AL. *v.* ZEHRINGER, DIR., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Doner v. Zehringer*, Slip Opinion No. 2014-Ohio-2102.]**

*Mandamus—Request to hold respondent in contempt denied.*

(No. 2009-1292—Submitted April 30, 2014—Decided May 21, 2014.)

IN MANDAMUS.

_____

{¶ 1}  This cause came on for further consideration upon a show-cause hearing held before the court on April 30, 2014.  Upon consideration thereof, relators' request to hold respondents in contempt is denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

**PFEIFER, J., concurring.**

{¶ 2}  The parties are back before this court upon the relators' motion for an order for respondents to show cause why they should not be held in contempt

and an order for court-supervised mediation. Upon consideration of the representations of respondent Ohio Department of Natural Resources ("ODNR") that it has available sufficient funds to fully compensate all relator-landowners' claims as they may be determined by jury verdict or settlement and that it is able to proceed to trial at an accelerated pace as may be determined by the Mercer County Common Pleas Court with the possible assistance of visiting judges appointed by the chief justice, I concur with this court's decision to deny the relators' motion for a further contempt order.

{¶ 3} This motion brought about the third proceeding before the court in this dispute over flooding caused by the construction in 1997 of a new spillway on the dam that created Grand Lake St. Marys. In 2011, this court found that a taking of the disputed property below the spillway had occurred. This court issued a writ of mandamus to compel ODNR to commence appropriation proceedings to determine the amount of the taking. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 86. The two subsequent enforcement proceedings before this court relate to ODNR's prosecution, or lack thereof, of those ordered appropriation proceedings.

{¶ 4} ODNR was brought before this court in December 2012 on a motion to show cause why it should not be held in contempt for its delays in instituting the appropriation cases. In responding to the 2012 motion for contempt, the state argued in briefing and oral argument that it was proceeding with deliberate speed on the appropriation cases. The state represented to this court that for one category of landowners, the extent of the taking had been established but that appraisals needed to be completed before appropriation cases could commence. This court concluded that ODNR was in contempt of the court's 2011 order to commence appropriation proceedings. To correct that state of affairs, this court issued the following order:

2

We order respondents to complete all appraisals on relators' parcels for the 2003-flood-level cases within 90 days and to file all appropriation cases for these parcels within 120 days. For the remaining 20 parcels that respondents claim they have not yet surveyed because they involve flooding above the 2003 flood level, respondents are ordered to institute declaratory-judgment actions in the Mercer County Common Pleas Court within 30 days to determine the legal rights of the parties for those parcels. We deny relators' request for attorney fees and for a fine.

*State ex rel. Doner v. Zehringer,* 134 Ohio St.3d 326, 2012-Ohio-5637, 982 N.E.2d 864, ¶ 3.

{¶ 5} The 2003-flood-level cases were so denominated because the extent of the taking of those parcels had been established to be the level of the 2003 flood. We ordered appraisals for the 2003-flood-level cases because ODNR stated that surveys establishing the extent of the taking had already been completed. The other 20 parcels were not reached by the level of the 2003 flood—thus, the extent of the take had not been established—so the state was ordered to determine the rights of the owners of those 20 parcels.

{¶ 6} Now, relators are back before this court upon the filing of another contempt motion, alleging, among other things, that the state has abandoned the 2003 flood level as establishing the extent of the taking. There is no doubt that the state represented to this court in the 2012 proceeding that the 2003 flood level set the extent of the taking for the parcels that were affected by that flood.

{¶ 7} In its brief before the 2012 hearing, in an attempt to demonstrate the progress it had made in prosecuting appropriations cases, ODNR stated, "ODNR developed a professional and consistent basis for conducting the more

3

than 90 surveys needed to delineate the extent of the flowage easements, and that survey work is virtually complete."

{¶ 8} By the time of the hearing on the motion for contempt, counsel for ODNR reported to this court that the surveys of properties within the 2003 flood level—undertaken to delineate the extent of the taking—were complete.

{¶ 9} The state explained in its brief its method for determining the extent of the taking:

Although Relators provided rough drawings of the approximate area of flooding on their parcels in their petition for the Writ of Mandamus, this Court found only that a taking occurred, but did not determine the extent of flowage easements alleged to be taken on each of the parcels. Instead, this Court directed that the Mercer County Common Pleas Court should determine that issue. The State, cognizant of the trial court's prior rulings in the previous landowner actions which had already [been] litigated, knew that the trial court had adopted the extent of the take as the height of the 2003 July flood event documented by the Mercer County Engineer. ODNR used this data from the County Engineer and airborne laser measurements from Ohio's Geographically Referenced Information Program and GPS field measurements. * * * Further, in one of the earlier cases, the trial court held that a survey and metes and bounds legal description must be prepared so that a jury could accurately determine compensation.

(Footnote omitted.)

**{¶ 10}** At oral argument in December 2012 on the contempt motion, counsel for ODNR explained the process required for bringing appropriation cases to court. Justice Lanzinger asked ODNR's counsel to relate what the agency had done to demonstrate that it was fast-tracking the cases. Counsel stated that establishing the extent of the taking came first:

> Immediately, what happened was deciding what even needs to be surveyed. What does the department think the taking is? What does the department think the borderline should be between the flowage easement and the unencumbered property? So that was the first point. The second point was then getting the surveys done to create legal descriptions for those flowage easements.

**{¶ 11}** ODNR's counsel told this court that surveys established the extent of the taking and that the surveys were based on the extent of the 2003 flood:

> [ODNR Counsel:] The first effort had to be surveys * * *. First off to determine what possibly the taking even is. Because that was an issue that this court left up to the trial court in Mercer County to determine—the extent of the taking on each individual parcel. So the first effort of the department was to do surveys and create legal descriptions for those takes on each parcel.
>
> [Justice Pfeifer:] And how did you determine that? Was there a hearing in Mercer County to determine the extent of the take or—
>
> [ODNR Counsel:] No, the department relied on some earlier litigation. There was an earlier set of cases involving the

spillway in which it had been determined that the 2003 flood level was the extent of the taking.

**{¶ 12}** ODNR's statements at the show-cause hearing and in its brief conclusively showed that ODNR had completed all the surveys of property involving the 2003 flood, thus establishing the extent of the taking of those properties.

**{¶ 13}** In explaining to Justice O'Donnell why the 20 parcels in the declaratory-judgment cases had not been surveyed, counsel acknowledged that it was because for those parcels only, the extent of a taking had not been established—unlike the 2003-flood-level cases:

> Because there is a legal issue. * * * Because they need to know where is the flood level. Well, the flood level that was established by the Mercer County Common Pleas Court was the level of the 2003 flood, so that's the extent of the taking. If you have parcels whose elevations are above that flood level, then what do you survey?

**{¶ 14}** This court ordered appraisals in the 2003-flood-level cases because ODNR represented to this court that the surveys establishing the extent of the taking in those cases had been completed. All that was left to do was the appraisals before appropriation proceedings could begin in earnest. This court, working from the representation of the state that the extent of the takings had been established, ordered an aggressive schedule to get appropriation proceedings underway.

**{¶ 15}** An efficient, orderly, and prompt resolution of all of the relators' claims continues to be our intent and expectation. It appears from the exhibits

filed in this matter that the Mercer County Common Pleas Court has a comprehensive understanding of both the legal and factual issues that ODNR is attempting to litigate and relitigate; that court represents the proper forum to determine those matters in an expeditious manner. Accordingly, I concur.

O'NEILL, J., concurs in the foregoing opinion.

_____

Vorys, Sater, Seymour & Pease, L.L.P., Bruce L. Ingram, Joseph R. Miller, Thomas H. Fusonie, and Martha Brewer Motley, for relators.

Frost Brown Todd, L.L.C., Scott D. Phillips, Brian W. Fox, Frank J. Reed Jr., and Matthew C. Blickensderfer, for respondents.

_____