[Cite as *State ex rel. Karr Revocable Trust v. Zehringer*, 2014-Ohio-2241.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO EX REL.
JEAN A. KARR REVOCABLE
TRUST, ET AL.,

     RELATORS-APPELLEES,          CASE NO.  10-13-18

     v.

JAMES ZEHRINGER, DIRECTOR,
OHIO DEPARTMENT OF NATURAL
RESOURCES, ET AL.,          O P I N I O N

     RESPONDENTS-APPELLANTS.


**Appeal from Mercer County Common Pleas Court
Trial Court No. 13-CIV-084**

**Judgment Affirmed**

**Date of Decision:   May 27, 2014**


**APPEARANCES:**

     *Scott D. Phillips and Brian W. Fox* **for Appellants**

     *Thomas H. Fusonie*  **for Appellees**

**PRESTON, J.**

{¶1} Respondents-appellants, the Ohio Department of Natural Resources and its director, James Zehringer (collectively, "ODNR"), appeal the judgment of the Mercer County Court of Common Pleas granting relators-appellees, Jean A. Karr Revocable Trust, Chad M. Knapke, Andrea M. Knapke, Mark L. Knapke Revocable Living Trust, Timothy A. Knapke, William J. Ransbottom, Gale A. Thomas, Nelda G. Thomas, Agnello Trust, and Powell Living Trust (collectively, "Relators"), a writ of mandamus ordering ODNR to deposit with the clerk of court money equal to the values of the permanent and perpetual flowage easements of which ODNR has taken possession and any damages to the residue of the Relators' properties as determined by ODNR.  Because Article I, Section 19 of the Ohio Constitution requires that compensation "*first* be made in money, or *first* secured by a deposit of money" when private property is taken for public use, and because the Relators have no plain and adequate remedy in the ordinary course of the law, we affirm the judgment of the trial court.  (Emphasis added.)

{¶2} In *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, the Court determined that landowners located downstream from the western spillway of Grand Lake St. Marys—including the Relators—were entitled to compensation under Article I, Section 19 of the Ohio Constitution for property ODNR had taken as a result of flooding caused by the spillway ODNR constructed

and ODNR's lake-level-management practices. *Id.* at ¶ 59-83. (*See also* Complaint, Doc. No. 3, ¶ 2-3). The Court granted the landowners' writ compelling ODNR to "commence appropriation proceedings to determine the amount of their taking of the property." *Doner* at ¶ 86. The Court further stated that "[t]he determination of the extent of the taking will be made by the court presiding over the appropriation proceeding." *Id.*

**{¶3}** Following *Doner*, in December 2012, ODNR initiated appropriation proceedings against the Relators in the Mercer County Court of Common Pleas. (Doc. No. 3, ¶ 10, 18-24). At the time ODNR filed the appropriation proceedings against the Relators, ODNR did not file with the clerk of court money deposits in the amounts of ODNR's appraisals of the properties. (*Id.*, ¶ 10).

**{¶4}** On April 3, 2013, the Relators filed an original action in mandamus in the Mercer County Court of Common Pleas seeking to compel ODNR to file with the clerk of court "deposits in the amount of the State's appraisals in the appropriation proceedings." (Doc. No. 3). In their complaint for a writ of mandamus and memorandum in support, the Relators argued that Article I, Section 19 of the Ohio Constitution and R.C. Chapter 163 require that ODNR file deposits at the time of filing its appropriation proceedings. (*Id.*, ¶ 12); (Doc. No. 6).

{¶5} On April 30, 2013, ODNR filed a motion for an extension of time to respond, which the trial court granted. (Doc. Nos. 12-13).

{¶6} On June 5, 2013, ODNR filed its answer to the Relators' complaint for a writ of mandamus. (Doc. No. 19). The next day, ODNR filed its memorandum in opposition to the Relators' complaint, arguing that mandamus is inappropriate because Ohio law does not impose a clear legal duty to file deposits in appropriation proceedings and because the Relators have an adequate remedy at law. (Doc. No. 20).

{¶7} On August 16, 2013, the trial court heard oral argument concerning the Relators' complaint for a writ of mandamus. (Doc. No. 24). On October 2, 2013, the trial court issued a judgment entry and decision granting the writ and ordering ODNR to deposit with the clerk of court by October 31, 2013 "money equal to the value of the permanent and perpetual flowage easements of which it has taken possession in the matters it has initiated against the relators together with the damages, if any, to the residue of the individual relators' property as determined by ODNR * * *." (Doc. No. 29). The trial court also ordered a hearing on November 4, 2013 for the issue of attorney fees. (*Id.*).

{¶8} On October 22, 2013, the trial court filed an amended judgment entry finding no just cause for delay and certifying the October 2, 2013 decision as a final, appealable order under Civ.R. 54(A). (Doc. No. 31).

{¶9} On October 25, 2013, ODNR filed a notice of appeal of the trial court's October 22, 2013 amended judgment entry and a motion to stay execution of the trial court's judgment pending appeal. (Doc. Nos. 34, 33). On November 12, 2013, the trial court granted ODNR's motion to stay pending appeal.

{¶10} ODNR raises two assignments of error. We elect to address the assignments of error together.

### Assignment of Error No. I

**The trial court erred by granting a writ of mandamus where ODNR had no clear legal duty to deposit money at the time of filing a petition for appropriation.**

### Assignment of Error No. II

**The trial court erred by granting a writ of mandamus where the appropriation case provided an adequate forum to litigate the merits of the underlying issues.**

{¶11} In its first assignment of error, ODNR argues that it had no clear legal duty to deposit money with the clerk of court because R.C. 163.06(A), governing deposits, uses the term "may," indicative of discretion. ODNR further argues that Article I, Section 19 of the Ohio Constitution—the "Takings Clause"—like R.C. 163.06(A), does not set forth a clear legal duty to deposit the money. ODNR asserts that the Takings Clause and R.C. 163.06(A) should be interpreted to avoid any conflict between the two and that because R.C. 163.06(A) does not set forth a clear duty to deposit money, neither does the Takings Clause.

{¶12} In its second assignment of error, ODNR argues that mandamus is inappropriate because the Relators have adequate legal remedies that they did not pursue. Specifically, ODNR argues that the Relators could have filed in the appropriation proceedings counterclaims for declaratory relief or motions requesting that the court require deposits.

{¶13} To grant a writ of mandamus, a court must conclude that the relator proved by clear and convincing evidence that the relator has a clear legal right to the relief requested, that the respondent is under a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy at law. *Doner*, 130 Ohio St.3d 446, at ¶ 57; *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983). Mandamus is an extraordinary remedy "issued with great caution and discretion and only when the way is clear." *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977).

{¶14} A court on appeal reviews a decision to issue or deny the writ under an abuse-of-discretion standard. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph ten of the syllabus; *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 64 (1995). An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude on the lower court's part. *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 107 (1995).

{¶15} The parties do not dispute the facts material to our determination of this case. In addition, although ODNR disputes whether it has a clear legal duty to deposit money, it does not dispute the first prerequisite to granting a writ of mandamus—namely, a clear legal right to the requested relief. Accordingly, this case presents two legal questions related to the first and second assignments of error, respectively: (1) whether ODNR, at the time of filing the appropriation proceedings, had a legal duty under the Takings Clause or R.C. Chapter 163 to deposit money with the clerk of court in amounts equal to the values of the permanent and perpetual flowage easements of which ODNR has taken possession and any damages to the residue of the properties; and, (2) whether the Relators have any plain and adequate remedy at law.

{¶16} As we will explain in greater detail below, the Relators were entitled to the writ of mandamus they sought, and the trial court did not abuse its discretion in granting it. The Takings Clause required that ODNR compensate the Relators or make a money deposit *before* taking the Relators' property. By the time ODNR filed the appropriation proceedings, it had already taken the Relators' properties. *Doner*, 130 Ohio St.3d 446, at ¶ 83, 86. Therefore, compensation or deposits by ODNR were overdue under the Takings Clause by the time it filed the appropriation proceedings, and ODNR had a clear legal duty to make deposits

under the Takings Clause. Moreover, the Relators did not have any plain and adequate remedies at law precluding a writ of mandamus.

{¶17} We first address the clear-legal-duty prerequisite to granting a writ of mandamus. The Supreme Court of Ohio recently explained the duties of courts when it comes to determining the existence of a clear legal duty:

> Although it is true that we cannot create the legal duty enforceable in a mandamus case, *State ex rel. Baroni v. Colletti*, 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶ 22, it is equally true that "courts in mandamus actions have a duty to construe constitutions, charters, and statutes, if necessary, and thereafter evaluate whether the relator has established the required clear legal right and clear legal duty," and in doing so, the courts have a "duty to resolve all doubts concerning the legal interpretation of these provisions." *State ex rel. Fattlar v. Boyle*, 83 Ohio St.3d 123, 125, 698 N.E.2d 987 (1998); *see also State ex rel. Melvin v. Sweeney*, 154 Ohio St. 223, 225-226, 94 N.E.2d 785 (1950).

*State ex rel. McQueen v. Cuyahoga Cty. Court of Common Pleas, Probate Div.*, 135 Ohio St.3d 291, 2013-Ohio-65, ¶ 16.

{¶18} In this case, we must determine whether the Takings Clause imposes on ODNR a clear legal duty to make deposits in the appropriation proceedings. The Takings Clause provides:

> Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

Ohio Constitution, Article I, Section 19.

{¶19} "'Where the language of a * * * constitutional provision is clear and unambiguous, it is the duty of courts to enforce the provision as written.'" *State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, ¶ 60, quoting *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 15 (1989). "Words used in the Constitution are construed according to their usual or customary meaning." *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82

Ohio St.3d 539, 542 (1998). *See also State ex rel. King v. Summit Cty. Council*, 99 Ohio St.3d 172, 2003-Ohio-3050, ¶ 36, citing *State ex rel. Saxbe v. Brand*, 176 Ohio St. 44 (1964) (court uses dictionary definitions to determine meaning of undefined constitutional language).

{¶20} Here, the parties do not contend that ODNR took the Relators' property "in time of war or other public exigency" or to make or repair roads open to the public without charge, so the first half of the second sentence of the Takings Clause does not apply in this case. Rather, the cases involving the Relators' properties fall into the category of "all other cases, where private property shall be taken for public use," in which "a compensation therefor shall *first* be made in money, or *first* secured by a deposit of money * * *." (Emphasis added.) Key to this portion of the Takings Clause is the word "first."

{¶21} While there are several dictionary definitions of "first," the most relevant—when reading the word in context with the remainder of the Takings Clause—are: "preceding all others," "earliest in time," "before any or some other person or thing (as in time, space, rank, or importance)," and "beginning, outset." Webster's Third New International Dictionary 856-857 (2002). Accordingly, the Takings Clause clearly and unambiguously requires the appropriating entity in all cases—other than "in time of war or other public exigency" and to make or repair

roads open to the public without charge—to either compensate a private-property owner or deposit money *before* taking the private property.

{¶22} Furthermore, the Takings Clause does not distinguish between situations in which the government formally exercises the power of eminent domain and situations in which a court determines in an inverse-condemnation proceeding that the government took private property. Rather, outside instances of "war or other public exigency" and the making or repair of roads open to the public without charge, the language of the Takings Clause clearly and unambiguously applies whenever "private property shall be taken for public use." Ohio Constitution, Article I, Section 19.

{¶23} Our interpretation of the Takings Clause is consistent with that of other districts of the Court of Appeals, which have construed it to require money compensation or a money deposit before an appropriating entity may take private property. *See Octa v. Octa Retail, L.L.C.*, 12th Dist. Fayette No. CA2007-04-015, 2008-Ohio-4505, ¶ 8 ("In all other cases where private property is taken for public use, compensation must first be assessed by a jury and paid to the owner in that amount or secured by a deposit *before* the agency takes possession." (Emphasis added.)); *In re Appropriation of Easement for Highway Purposes*, 90 Ohio App. 471 (2d Dist.1951), paragraph one of the syllabus ("Section 19, Article I of the Constitution of Ohio, pertaining to the inviolability of private property, operates as

a limitation on the sovereign power of eminent domain and requires the payment of compensation or the deposit thereof as a *prerequisite* to the taking of private property for public use in all cases except where such property is taken in time of war or other public exigency imperatively requiring its immediate seizure or for the purpose of making or repairing roads open to the public without charge." (Emphasis added.)).

**{¶24}** ODNR's argument that the Takings Clause "provides no clear delineation for the appropriation process relative to property that has ***already been taken***" ignores the Takings Clause's plain and unambiguous requirement that compensation or a deposit be made *before* private property is taken. (Emphasis sic.) (Appellant's Brief at 6). Courts have a "duty to construe constitutional provisions to avoid unreasonable or absurd results." *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, ¶ 50, citing *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, ¶ 58.

**{¶25}** ODNR's construction of the Takings Clause would lead to an unreasonable and absurd result. That is, under ODNR's construction, it would have been required to compensate the Relators or made deposits before taking the Relators' properties if it would have formally exercised the power of eminent domain, but because ODNR has already taken the Relators' properties before initiating any proceeding, it need not compensate the Relators or deposit money in

the since-filed appropriation proceedings. Adopting ODNR's construction would allow ODNR or any other governmental entity to avoid the Takings Clause's compensate-or-deposit requirement simply by taking property before initiating an appropriation proceeding. We refuse to so construe the Takings Clause.

{¶26} The Supreme Court determined that ODNR has already taken the Relators' properties. *Doner*, 130 Ohio St.3d 446, at ¶ 83, 86. However, ODNR has not compensated the Relators or deposited money in the appropriation proceedings. Therefore, we conclude that the Relators proved by clear and convincing evidence that ODNR has a clear legal duty under the Takings Clause to deposit with the clerk of court money in amounts equal to the values of the permanent and perpetual flowage easements of which ODNR has taken possession and any damages to the residue of the properties.[1]

{¶27} We need not address whether the sections of R.C. Chapter 163 cited by the Relators require ODNR to compensate them or deposit money. We are under a duty to "construe constitutions as well as statutes as necessary to discover whether the duty exists." *State ex rel. Tomino v. Brown*, 47 Ohio St.3d 119,

---

[1] We note that compensation under the Takings Clause includes compensation for the property taken as well as damages to the residue of the property. *State ex rel. Reich v. Beachwood*, 158 Ohio App.3d 588, 2004-Ohio-5733, ¶ 9 (8th Dist.) ("When a property owner is compensated for an appropriation of a portion of his property taken for a public use, 'the owner of the property so taken is entitled to be compensated therefor in money. Section 19, Article I, Ohio Constitution. Such compensation includes not only compensation to the landowner for the land actually taken, but, also, damages to the residue of the land of the landowner resulting from the taking and the improvement for which the taking is made.'"), quoting *Columbus v. Farm Bur. Coop. Assn.*, 27 Ohio App.2d 197, 200 (10th Dist.1971). ODNR makes no argument to the contrary.

120 (1989). Having concluded that the Takings Clause supplies the clear legal duty in this case, it is unnecessary for us to address other potential bases for the legal duty, which are rendered moot. *See State ex rel. Vindicator Printing Co. v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, ¶ 42.

{¶28} We next address ODNR's second assignment of error, in which it argues that a writ of mandamus is inappropriate because the Relators have adequate legal remedies—namely, counterclaims for declaratory judgment or motions in the appropriation proceedings.

{¶29} "A writ of mandamus will not be issued if there is a plain and adequate remedy in the ordinary course of the law." *State ex rel. Shemo v. Mayfield Hts.*, 93 Ohio St.3d 1, 5 (2001), citing R.C. 2731.05 and *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 64 (2000). "'In order for an alternative remedy to constitute an adequate remedy at law, it must be complete, beneficial, and speedy.'" *Id.*, quoting *State ex rel. Natl. Electrical Contractors Assn., Ohio Conference v. Ohio Bur. of Emp. Serv.*, 83 Ohio St.3d 179, 183 (1998).

{¶30} Counterclaims for declaratory judgment would not serve as plain and adequate legal remedies for the Relators. "'In general, if declaratory judgment would not be a complete remedy unless coupled with extraordinary ancillary relief in the nature of a mandatory injunction, the availability of declaratory judgment

does not preclude a writ of mandamus.'" *LetOhioVote.org*, 123 Ohio St.3d 322, at ¶ 15, quoting *State ex rel. Mill Creek Metro. Park Dist. Bd. of Commrs. v. Tablack*, 86 Ohio St.3d 293, 297 (1999). "Standing alone, a declaratory judgment cannot compel a government official to perform a specific legal duty." *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, ¶ 10, citing *State ex rel. Ohio Civ. Serv. Employees Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, ¶ 16.

**{¶31}** Here, even if the Relators obtained declaratory judgments stating that ODNR was legally obligated to file money deposits in the appropriation proceedings, those judgments would not be enough to compel ODNR to satisfy that obligation. *See Gen. Motors Corp.* at ¶ 10. Therefore, declaratory judgments would not serve as plain and adequate legal remedies for the Relators.

**{¶32}** ODNR also argues that the Relators could file motions in the appropriation proceedings requesting that the court order ODNR to make money deposits. However, once the trial court disposed of the Relators' motions— whether or not it granted them—the Relators would be forced to wait for their respective appropriation proceedings to conclude before they or ODNR could appeal. Once their respective cases were appealed, the Relators would have to wait for the Court of Appeals, followed perhaps by the Supreme Court, to review

the trial court's judgments, including any interlocutory orders such as the orders granting or denying their motions to require ODNR to make money deposits.

**{¶33}** "Absent special circumstances or a 'dramatic fact pattern,' postjudgment appeal constitutes a complete, beneficial, and speedy remedy." *State ex rel. Toledo Metro Fed. Credit Union v. Ohio Civ. Rights Comm.*, 78 Ohio St.3d 529, 531 (1997), citing *State ex rel. Westbrook v. Ohio Civ. Rights Comm.*, 17 Ohio St.3d 215, 217 (1985), *Fraiberg v. Cuyahoga Cty. Court of Common Pleas*, 76 Ohio St.3d 374, 379 (1996), and *State ex rel. Cody v. Toner*, 8 Ohio St.3d 22, 22-23 (1983). Many and well-documented are the special circumstances surrounding this action.

**{¶34}** Since ODNR's 1997 replacement of the western spillway, the Relators have experienced more frequent, extensive, prolonged, and costly flooding. *Doner*, 130 Ohio St.3d 446, at ¶ 17; (Doc. No. 3, ¶ 2). In July 2009, the Relators and other landowners filed in the Supreme Court an action for a writ of mandamus to compel ODNR "to initiate appropriation proceedings for the taking of their property." *Doner* at ¶ 16; (Doc. No. 3, ¶ 2). In December 2011, the Supreme Court granted the writ to compel ODNR to commence appropriation proceedings to determine the amount of its taking of the property. *Doner* at ¶ 86; (Doc. No. 3, ¶ 3). Two years later, the Supreme Court held that ODNR was in contempt of the Court's writ. *State ex rel. Doner v. Zehringer*, 134 Ohio St.3d

326, 2012-Ohio-5637, ¶ 3; (Doc. No. 3, ¶ 11). On April 30, 2014, the Supreme Court held a show-cause hearing on the Relators' motion requesting that the Supreme Court find ODNR in contempt of the Court's writ and contempt decision; however, on May 21, 2014, the Court denied the Relators' request to hold ODNR in contempt. *State ex rel. Doner v. Zehringer*, Slip Opinion No. 2014-Ohio-2102. In short, it has now been 17 years since ODNR took the Relators' properties, and the Relators remain uncompensated.

**{¶35}** If we denied the Relators' requested writ of mandamus and relegated them to filing motions in their respective cases, not until the conclusion of the appeals of those cases—whether the Relators or ODNR initiated the appeals— would the Relators' remedies become complete. Given the special circumstances of this action, motions in the appropriation proceedings would not be sufficiently speedy to constitute a plain and adequate legal remedy. *See Shemo*, 93 Ohio St.3d at 5 ("Given the lengthy litigation that this dispute has already engendered, relegating relators to a motion in the trial court and yet another appellate process would not be sufficiently speedy."); *Cody* at 22-23.

**{¶36}** For these reasons, we conclude that the Relators demonstrated by clear and convincing evidence that they do not have a plain and adequate legal remedy. The Relators proved by clear and convincing evidence their entitlement

to a writ of mandamus, and the trial court did not abuse its discretion in granting the writ.

{¶37} ODNR's assignments of error are overruled.

{¶38} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs.**

**/jlr**

**WILLAMOWSKI, P.J., dissents.**

{¶39} I agree that ODNR had a legal duty to deposit money with the clerk of court. I disagree, however, that a writ of mandamus was proper because I believe that "a plain and adequate remedy in the ordinary course of the law" was available to the Relators. *See* R.C. 2731.05. For this reason, I would reverse the trial court's judgment and dismiss the writ of mandamus.

{¶40} As the majority recognizes, a prerequisite to the issuance of a writ of mandamus "is the unavailability of a plain and adequate remedy in the ordinary course of the law." *State ex rel. McCullough v. Indus. Comm.*, 94 Ohio St.3d 156, 158, 761 N.E.2d 24 (2002); *accord* R.C. 2731.05.

> "Extraordinary remedies, *i.e.,* mandamus [and] prohibition * * *, are
> available only when usual forms of procedure are incapable of

affording relief. They may not be employed before trial on the merits, as a substitute for an appeal for the purpose of reviewing mere errors, or irregularities in the proceedings of a court having proper jurisdiction * * *."

*State ex rel. Levin v. Sheffield Lake*, 70 Ohio St.3d 104, 109, 637 N.E.2d 319 (1994), quoting *State ex rel. Woodbury v. Spitler*, 34 Ohio St.2d 134, 137, 296 N.E.2d 526 (1973). I believe that it is improper to grant this extraordinary remedy as a substitute for a simple request with the trial court in the actions currently pending. I am especially troubled with the fact that the Relators have not even attempted to request that the deposits be made prior to filing their petition for an extraordinary writ.[2] This appears to be a tactic aimed at circumventing the proper procedure and bypassing the trial court, which has jurisdiction over the matter. The Ohio Supreme Court "disapproved of litigants who request extraordinary writs to gain immediate review of and interfere with court procedure." *Levin*, 70 Ohio St.3d at 110. I recognize that this path is more efficient, as the Relators filed one writ, which encompassed multiple cases, rather than filing their separate motions in each of their respective cases. Yet, "efficiency" is not a proper ground for granting the extraordinary remedy of a writ.

{¶41} The majority errantly holds that the Relators would not have a plain and adequate remedy in the ordinary course of the law if they filed motions for an order requiring a money deposit in their underlying appropriation proceedings

---

[2] As presented to us by the parties, no alternative legal remedy was requested in the trial court regarding the deposits. (*See* App't Br. at 7; App'e Br. at 4; Reply Br. at 4.)

-19-

because the "motions in the appropriation proceedings would not be sufficiently speedy to constitute a plain and adequate legal remedy." (Majority Op. at ¶ 35.) Motions for an order requiring a money deposit would be an equally speedy, if not more so, legal remedy. It is not our province to assume that the trial court would have denied the motions and that "the Relators would be forced to wait for their respective appropriation proceedings to conclude before they or ODNR could appeal." (*Id.* ¶ 32) I do not subscribe to the idea of granting a writ based on a possibility that the trial court might deny the requested legal remedy before the request has even been made.[3]

{¶42} In support of its holding, the majority cites the Ohio Supreme Court's case where a motion in the trial court to enforce its prior judgment and "yet another appellate process" were considered to "not be sufficiently speedy" alternatives to a writ of mandamus. *State ex rel. Shemo v. Mayfield Hts.*, 93 Ohio St.3d 1, 5, 752 N.E.2d 854 (2001). It is important to recognize that the *Shemo* case had very "unique circumstances." *Id.* at 4. The Ohio Supreme Court recognized that the dispute over the issue that was the subject of the mandamus petition has spanned over five years and involved multiple appeals, including a prior appeal to the Ohio Supreme Court. *Id.* at 1-2. The respondents in that case

---

[3] In an unlikely event that their motions were denied and the orders of denials were not final orders, thus requiring the Relators to wait until the conclusion of the proceedings to request appeal, I may be willing to reconsider the necessity for the extraordinary remedy. But it is a backward process to request a writ under an assumption that a denial might occur. If their motions were granted, but the order not complied with, a motion for contempt finding would be an appropriate, adequate and speedy legal remedy.

-20-

continuously challenged and refused to follow the trial court's judgment. *Id.* at 2-4. "In the interim, relators' prospective primary tenant, Costco, [could] withdraw and destroy the proposed retail development approved by the court." *Id.* at 4. Dispositive of the court's decision that a motion would be inadequate was the fact that the respondents "have specified that they will not abide by the trial court judgment unless [the Ohio Supreme Court] order[s] them to do so." *Id.* at 5.

{¶43} The unique circumstances of *Shemo* are not present in the current case. Therefore, I would order the writ to be dismissed and the Relators should proceed with their requests for money deposits by filing motions in their respective cases in the trial court.