[Cite as *Ohio Power Co. v. Duff*, 2020-Ohio-4628.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| OHIO POWER COMPANY, | : | CASE NO. CA2020-01-004 |
| Appellee, | : | O P I N I O N<br>9/28/2020 |
| | : | |
| - vs - | : | |
| | : | |
| DAVID DUFF, et al., | : | |
| Appellants. | : | |

CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CV20190161

Porter Wright Morris & Arthur LLP, Ryan P. Sherman, Jason T. Gerken, Sara C. Schiavone, 41 South High Street, 29th Floor, Columbus, Ohio 43215, for appellee

Ricketts Co., LPA, Richard T. Ricketts, Andrew C. Clark, 50 Hill Road South, Pickerington, Ohio 43147, for appellants

**M. POWELL, J.**

{¶ 1} Appellants, David and Lisa Duff, appeal a decision of the Madison County Court of Common Pleas granting judgment in favor of appellee, Ohio Power Company, in an action involving appropriation of real estate.[1]

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

{¶ 2}   Ohio Power Company is a subsidiary of American Electric Power, a public utility company ("AEP").  As part of a larger infrastructure project, AEP decided to replace an aging and unreliable electric transmission line serving Madison and Pickaway Counties ("the Project").  The Project involves rebuilding approximately 23 miles of the 69kV transmission line which originates in the village of Mount Sterling, Madison County, Ohio.  The Duffs own a 207-acre property south of Mount Sterling. When rebuilding a transmission line, AEP tries to follow the existing corridors and easements of the transmission line whenever possible, and further seeks to follow natural boundaries such as property lines, roads, and existing utility corridors.  In siting transmission lines, AEP considers the distance involved in different possible routes, the number of turns, and the proximity of residences, businesses, and other structures.

{¶ 3}   On November 27, 2018, AEP's Board of Directors (the "Board") adopted a resolution declaring the Project a public necessity and granting AEP authorization to acquire necessary easements or rights-of-way by eminent domain or otherwise.

{¶ 4}   The Project follows the path of the existing transmission line for the majority of its 23 miles.  However, AEP determined it was not feasible to follow the path of the existing line through Mount Sterling due to the village's growth since the line was built 70 years ago.  Rebuilding the line through downtown Mount Sterling would have required the condemnation and removal of several buildings.  Consequently, AEP's siting team decided to reroute the existing line around Mount Sterling.  The reroute cuts through the Duffs' property.

{¶ 5}   AEP representatives met with the Duffs to negotiate the easement necessary to build the transmission line across their property.  The easement is approximately 40 feet wide and 1,200 feet long and constitutes 1.5 acres of the Duffs' property.  The Duffs proposed that the route be constructed along the northern border

- 2 -

of their property. AEP considered the Duffs' proposed route but ultimately rejected it because it placed the transmission line next to residences and a church. Furthermore, it required two additional turns which would have added $200,000 to the cost of the Project. Ultimately, AEP and the Duffs were unable to reach an agreement.

{¶ 6} Consequently, on September 4, 2019, AEP initiated eminent domain proceedings under R.C. Chapter 163 by filing a verified petition for appropriation of an easement on the Duffs' property. The easement was attached to the petition and provided it was "for electric transmission, distribution, and internal communication purposes, being, in, over, under, through and across the [Duffs' property.]" The Duffs filed an answer to the petition, denying the necessity of the appropriation.

{¶ 7} Subsequently, the Duffs engaged in discovery, serving requests for admissions, interrogatories, and production of documents upon AEP in early October 2019. AEP initially denied discovery was allowed under the statutory procedure but eventually provided its responses on November 8, 2019. The Duffs complained that AEP's responses did not include any documents or a privilege log and otherwise "contain[ed] numerous inadequacies." On November 15, 2019, after being unable to resolve the dispute, the Duffs moved to compel AEP to respond to their discovery requests. A discovery hearing was scheduled for November 18, 2019; a necessity hearing was scheduled for November 25, 2019.

{¶ 8} By order of the trial court and agreement of the parties, both hearings were vacated on November 18, 2019. The necessity hearing was rescheduled for December 17, 2019. AEP was ordered to supplement its discovery responses and produce documents on or before November 25, 2019, and the parties were ordered to advise the trial court of any discovery impasse on or before December 6, 2019, to permit rescheduling of the hearing on the Duffs' motion to compel discovery.

- 3 -

{¶ 9} AEP subsequently provided the Duffs with an additional 34 pages of documents; however, the Duffs remained unsatisfied with AEP's discovery responses. Consequently, the Duffs faxed a motion on December 6, 2019, requesting "a telephone scheduling conference to discuss outstanding discovery issues and to schedule a hearing on [their] Motion to Compel Discovery[.]" The faxed motion asserted that AEP's supplemental discovery responses were "believed to be an incomplete production" and that the parties were unable to come to an agreement, through stipulation or otherwise, to resolve their discovery dispute.

{¶ 10} The necessity hearing was held on December 17, 2019. Three witnesses testified on behalf of AEP; David Duff testified on his own behalf. At the outset of the hearing, counsel for the Duffs stated the following:

> I did file a motion seeking a telephone conference and hearing on the motion to compel discovery. I believe that was on Friday, the 6th of December, and I do know we exchanged some messages yesterday and I had requested a continuance of this hearing based on what I felt were some insufficient subpoena responses and the Court did deny that request for a continuance, so I just wanted to put that on the record, but otherwise I think we are ready to move forward.

The trial court then stated, "The record reflects." The subpoena comment refers to subpoenas issued to two of AEP's contractors.

{¶ 11} On January 2, 2020, the trial court granted judgment in favor of AEP, finding that the Duffs had failed to establish that the taking of their property was unnecessary. Specifically, the trial court held that

> The Duff's attempted to argue at the hearing that AEP failed to make a good faith effort to exercise its discretion during the routing of this project. However, there were multiple routes considered during the development of this project. Route selection is discretionary and in the absence of bad faith, fraud, or gross abuse of discretion, that determination will not be disturbed by the courts.

***

There is sufficient evidence before the Court that satisfies the necessity requirement for the Madison-Harrison project and the proposed reroute at issue in this case. Due to the age of the line, the development of the town of Mount Sterling, the number of home owners potentially affected without the reroute, the cost of the alternative suggested by Mr. Duff, and Mr. Duff's testimony that the new line was necessary, AEP's proposed reroute is not an abuse of discretion, nor the result of fraud or bad faith.

Accordingly, because AEP passed a resolution of necessity, and because the Duff's [sic] failed to meet their burden to show the taking was unnecessary, the Court finds in favor of [AEP].

{¶ 12} The Duffs appeal, raising three assignments of error that will be addressed out of order.

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO CONDUCT A HEARING ON DISCOVERY DEFICIENCIES AND REFUSED TO CONTINUE THE NECESSITY HEARING TO PERMIT THE DUFFS TO OBTAIN RESPONSIVE DOCUMENTATION.

{¶ 15} As will be discussed later, once the Board adopted the resolution that the easement across the Duffs' property was necessary, such created a rebuttable presumption of necessity for the appropriation. The parties agree that because the Project involved a transmission line lower than 100kV, it was not subject to the Ohio Power Siting Board jurisdiction. The Duffs assert that as a result, AEP's siting documents and the agendas and minutes of the Board were within AEP's exclusive control and not publicly available, and that their only means to obtain these documents was through the civil discovery process. The Duffs argue that under these circumstances and given the fact they notified the trial court they believed discoverable

- 5 -

materials were being wrongfully withheld by AEP, the trial court erred in summarily denying their request for a discovery hearing and a continuance of the necessity hearing, thereby forcing them to proceed with the necessity hearing without complete discovery responses.

{¶ 16} R.C. 163.22 provides that "[a]ll proceedings brought under sections 163.01 to 163.22 of the Revised Code shall be governed by the law applicable in civil actions and the Rules of Civil Procedure, including, but not limited to, the rules governing discovery, except as otherwise provided in those sections." Unless clearly inapplicable, the Ohio Rules of Civil Procedure apply to appropriation proceedings brought under R.C. Chapter 163. *See Cleveland Elec. Illum. Co. v. Astorhurst Land Co.*, 18 Ohio St.3d 268 (1985); *Highland Cty. Bd. of Commrs. v. Fasbender*, 4th Dist. Highland No. 98CA24, 1999 Ohio App. LEXIS 3565 (July 28, 1999). Thus, contrary to AEP's assertion, discovery is permitted in appropriation actions.

{¶ 17} We are unable to review the merits of the Duffs' argument. Resolution of this assignment of error requires that we review what discovery responses the Duffs claim are lacking, why AEP's failure to respond was unjustified, why the discovery was essential to the Duffs' defense, the particulars of the Duffs' request for a discovery hearing, and the trial court's ground for denying it.

{¶ 18} Following AEP's initial discovery responses, the Duffs moved to compel AEP to respond to their discovery requests on November 15, 2019. The motion specifically described what documents the Duffs were seeking to obtain, which interrogatories were essential to their defense, and why AEP's responses were deficient. Complying with the trial court's November 18, 2019 order, AEP subsequently provided supplemental discovery. On December 6, 2019, unsatisfied with AEP's supplemental discovery responses, the Duffs moved for a discovery hearing. The

motion merely argued that the supplemental discovery was "believed to be an incomplete production" and that the parties were unable to resolve their dispute. The motion did not explain what documents the Duffs were still seeking to obtain, what supplemental discovery responses were lacking, and why AEP's supplemental responses were not responsive to their requests. Neither the record nor the Duffs indicate whether AEP's initial discovery responses remained deficient after AEP provided supplemental discovery.

{¶ 19} The record seemingly indicates there was an in-chamber, off-the-record discussion on the eve of the necessity hearing during which the trial court summarily denied the Duffs' request for a discovery hearing and a continuance of the necessity hearing. At the outset of the necessity hearing, counsel for the Duffs summarily memorialized the trial court's denial of the requests on the record but provided no details of the in-chamber discussion. On appeal, the Duffs refer to this discussion in support of this assignment of error.

{¶ 20} While there may have been some discussion among the court and parties with regard to discovery prior to the necessity hearing, we are not privy to such communication because the Duffs failed to file an App.R. 9 statement. "The duty to provide a transcript for appellate review falls upon the appellant." *Parma v. Brown*, 8th Dist. Cuyahoga No. 104219, 2016-Ohio-7963, ¶ 6. Because there was no App.R. 9 statement filed with this court, "we do not know the content of that discussion. What was discussed among the court and the parties about the discovery issue is clearly germane to this appeal. And because it is incumbent upon the appellant to provide this court with either the transcript or App.R. 9(C) statement, we must presume regularity." *Id.* at ¶ 10. Therefore, we cannot conclude that the trial court erred in denying the Duffs' request for a discovery hearing.

{¶ 21} Likewise, we find no error in the trial court's denial of the Duffs' request for a continuance of the necessity hearing. R.C. 163.09, the statutory provision governing such hearings, provides that when a landowner files an answer to a petition for appropriation, the trial court "shall set a day, not less than five or more than fifteen days from the date was filed, to hear those matters." R.C. 163.09(B)(1). Ohio courts have held that R.C. 163.09 "is intentionally drafted in such a manner to expedite resolution regardless of the status of discovery." *Dublin v. Beatley*, 5th Dist. Delaware No. 18 CAE 01 0007, 2018-Ohio-3354, ¶ 38. "'The [Tenth Appellate District] court found that the legislative intent was that the cases should move as quickly as possible through the court so there is a minimum of delay in proceeding with the project, and the General Assembly was within its authority to set up a procedure so this type of case could proceed as quickly and expeditiously as possible.'" *Id.*, quoting *Masheter v. Benua*, 24 Ohio App.2d 7, 10 (10th Dist.1970). Likewise, R.C. 163.22 provides that appropriation proceedings "shall be advanced as a matter of immediate public interest and concern and shall be heard by the court at the earliest practicable moment." Accordingly, the trial court did not err in declining to continue the necessity hearing and in holding it on December 17, 2019, three weeks past its initial scheduled date.

{¶ 22} The second assignment of error is overruled.

{¶ 23} Assignment of Error No. 1:

{¶ 24} THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOCUSED ON THE NECESSITY OF THE ENTIRE PROJECT INSTEAD OF THE NECESSITY OF THIS SPECIFIC EASEMENT.

{¶ 25} Assignment of Error No. 3:

{¶ 26} THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CONCLUDED THAT OHIO POWER COMPANY'S ROUTE SELECTION OVER THE

DUFF PROPERTY WAS NOT THE PRODUCT OF A GROSS ABUSE OF DISCRETION.

{¶ 27} Because these assignments of error are interrelated, we will consider them together. The gravamen of the first and third assignments of error is that the trial court erred in granting a judgment in favor of AEP.

{¶ 28} In their first assignment of error, the Duffs challenge the trial court's finding that the easement was necessary, arguing that the trial court improperly focused on the necessity of the entire Project rather than the necessity of the easement at issue, and ignored the breadth of the easement sought by AEP. In their third assignment of error, the Duffs challenge the trial court's finding that AEP did not act in bad faith or abuse its discretion in routing the transmission line across their property.

{¶ 29} Both the United States and Ohio Constitutions allow appropriation of private property for public use, as long as the property owner receives just compensation in return. *See State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163. R.C. Chapter 163 controls the pleading and procedure in this appropriation action.

{¶ 30} R.C. 163.09(B)(1)(a) provides that when a property owner files an answer to an appropriation petition specifically denying the necessity of the appropriation, as the Duffs did here,

> Upon those matters, the burden of proof is on the agency by a preponderance of the evidence except [that] [a] resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation if the agency is not appropriating the property because it is a blighted parcel or part of a blighted area or slum.

{¶ 31} "[W]here a rebuttable presumption exists, a party challenging the

- 9 -

presumed fact must produce evidence of a nature that counterbalances the presumption or leaves the case in equipoise. Only upon the production of sufficient rebutting evidence does the presumption disappear." *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, ¶ 35. Thus, pursuant to R.C. 163.09, once an agency adopts a resolution of necessity for the appropriation, the burden of production shifts to the property owner to rebut the presumption of necessity for the appropriation. *See Ohio Power Co. v. Ogle*, 4th Dist. Hocking No. 09CA1/09AP1, 2009-Ohio-5953. "[A] determination that an appropriation is necessary for a public use will not be disturbed unless the property owner proves that the determination was the result of fraud, bad faith, or an abuse of discretion." *Eschtruth Invest. Co., L.L.C. v. Amherst*, 9th Dist. Lorain No. 10CA009870, 2011-Ohio-3251, ¶ 9. "In reviewing the trial court's conclusion that there was no such abuse of discretion, we are limited to determining whether the decision was supported by competent and credible evidence." *Ogle* at ¶ 10.

{¶ 32} "The 'necessity' required in the exercise of the power of eminent domain does not require a showing of absolute necessity, but includes 'that which is reasonably convenient or useful to the public.'" *Ferencz v. Toledo*, 6th Dist. Lucas No. L-87-379, 1988 Ohio App. LEXIS 5178, *7 (Dec. 30, 1988), quoting *Giesy v. Cincinnati, Wilmington, and Zanesville RR. Co.*, 4 Ohio St. 308, 327 (1854).

{¶ 33} The Board adopted a resolution of necessity for the appropriation of the easement across the Duffs' property on November 27, 2018. Thus, pursuant to R.C. 163.09(B)(1), the resolution created a rebuttable presumption of the necessity for the appropriation and the burden of production fell upon the Duffs to demonstrate that the appropriation was unnecessary. That is, AEP was presumed to have acted regularly and in a lawful manner and the Duffs needed to produce evidence that AEP abused

- 10 -

its discretion in determining that the easement was necessary.

{¶ 34} The Duffs challenge the trial court's finding that the easement across their property was necessary, arguing that the trial court improperly focused on the necessity of the Project itself rather than the necessity of the easement.[2] In support of their argument, the Duffs simply cite hearing testimony that rebuilding the transmission line along the existing route through Mount Sterling was not feasible "due to the number of structures that are within the right-of-way through town there." The Duffs assert this problem is of AEP's own making because AEP "permitted structures to encroach onto their existing right-of-way and was unwilling to defend and enforce the property rights that it already held." The fact that development within Mount Sterling rendered the routing of the transmission line through the village impactable does not foreclose AEP's determination that the existing right-of-way was inadequate or unsuitable for the Project and does not rebut the presumption that the easement is necessary.

{¶ 35} The Duffs next challenge the breadth of the easement sought by AEP. The resolution adopted by the Board recognized the public necessity for the reconstruction of approximately 23 miles of the 69kV transmission line serving Madison and Pickaway Counties. The easement sought by AEP and described at the hearing

---

2. In support of this argument, the Duffs cite R.C. 163.09(B)(2) for the proposition that "the judge may determine the necessity of the appropriation * * * as to any or all of the property or other interests sought to be appropriated." However, when properly quoted, R.C. 163.09(B)(2) provides that

> "[s]ubject to the irrebuttable presumption in division (B)(1)(c) of this section, only the judge may determine the necessity of the appropriation. If, as to any and all of the property or other interests sought to be appropriated, the court determines the matters in favor of the agency, the court shall set a time for the assessment of compensation by the jury not less than sixty days from the date of journalization of that determination, subject to the rights of the parties to request mediation under section 163.051 of the Revised Code and the right of the owner to an immediate appeal under division (B)(3) of this section.

as AEP's standard easement, seeks "a permanent easement and right of way for electric transmission, distribution, and internal communication purposes[.]" Citing the testimony of Steven Scott, AEP's transmission right-of-way agent, that "[the easement] doesn't limit us from coming back with a higher voltage," the Duffs assert that the easement exceeds the necessity set forth in the resolution because it allows the construction of a transmission line with a voltage higher than 69kV.

{¶ 36} We find no merits to the Duffs' argument. While Scott testified that the easement sought by AEP does not explicitly limit it to a 69kV transmission line and would not prevent AEP from building a higher kilovolt line in the future, he further testified that AEP could not "just go build a higher voltage line in this easement without additional approvals." Specifically, Scott explained that the next highest voltage is 138kV and that before a 138kV or higher voltage transmission line could be built in the easement at some point in the future, a need for such a higher voltage line would first have to be identified, and more importantly, such higher voltage line would have to be reviewed and approved by the Ohio Power Siting Board. Furthermore, Scott's testimony does not contradict or rebut the presumption that the easement across the Duffs' property is necessary.

{¶ 37} The Duffs next challenge the trial court's finding that AEP did not act in bad faith or abuse its discretion in rerouting the transmission line across their property. The Duffs assert that AEP's admitted failure to perform a siting study for the rerouting of the transmission line around Mount Sterling in violation of AEP's internal procedures and the lack of any documentation that other southern alternative routes were considered establish that AEP grossly abused its discretion in selecting the reroute across the Duffs' property. In support of their argument, the Duffs rely on the testimony of Alicia Cross, AEP's siting specialist, and Thomas Berkemeyer, AEP's assistant

secretary.

{¶ 38} Berkemeyer generally testified that a proposed resolution and supporting materials are provided to the Board two days prior to the Board's decision on the resolution to allow the directors to review the materials and ask questions about the project or resolution at the Board meeting if necessary. The Board itself is not involved in the siting process, the routing selection, or the language of individual easements. Berkemeyer explained that by the time a resolution gets to the Board, there is an understanding that all the people working on the project have done the necessary work and that the resolution is ready for decision.

{¶ 39} Cross generally explained what is considered in determining the best feasible route and described the several steps involved in a siting analysis. She further explained that a siting memo is a document memorializing the routing decisions that were made during the siting process. A siting memo always comes after a siting study has been performed and a routing decision has been made "because it documents that final route." Cross did not define a siting study but explained that such a study "is a little bit more robust for * * * greenfield projects with lots of different study segments and route alternatives." A greenfield project involves the building of a new transmission line, thereby requiring identifying a new corridor. A brownfield project involves the rebuilding of an existing transmission line utilizing existing rights-of-way as much as possible. Cross identified the Project as a brownfield project. The siting memo for the Project was submitted by both parties and admitted into evidence.

{¶ 40} On cross-examination, Cross testified that the difference between a siting study and a siting memo is the amount of information provided. Counsel for the Duffs referred to the defense Exhibit K, a lengthy document addressing "AEP Siting Study Process and Documentation" in Section 2 of the document. Cross testified there was

a siting memo for the Project but not a siting study. She further testified that to her knowledge, there was no documentation to show that southern routes other than the reroute across the Duffs' property were considered.

{¶ 41} Based on the foregoing, the Duffs assert that Exhibit K plainly requires that a siting study be performed, AEP "never performed a siting study for the reroute" across the Duffs' property in violation of its internal procedures in Exhibit K, AEP never considered other southern alternative routes, and therefore, AEP grossly abused its discretion in selecting the reroute across the Duffs' property.

{¶ 42} Exhibit K is titled "AEP Siting, Permitting, Right of Way, and Real Estate Requirements for Independent Power Producers exercising the Option to Build (PJM)." Under its Purpose heading, the document provides, inter alia, that AEP has a vested interest "to ensure that AEP's standards are met when an Independent Power Developer interconnects with AEP's transmission system[,]" "the following sections outline the technical standards, requirements, and procedures for siting * * * as well as for acquiring real estate and right-of-way that will ultimately be turned over to AEP as part of an Option-to-Build project[,]" and that failure to follow these standards, procedures, and technical requirements "may result in AEP requiring the Developer * * * to modify its siting, permitting, real estate and/or right of way work at the Developer's sole cost and expense before AEP will take ownership and/or interconnect with the Developer's project."

{¶ 43} Testimony at the hearing indicates that AEP is an independent power developer, that it will own the Project and the transmission lines and easements connected to the Project, and that it will be the sole such developer involved in the Project. The language of Exhibit K clearly focuses on AEP's relationship and work with independent power developers other than AEP. In other words, Exhibit K does not

govern AEP's internal procedures and its own work on a project. Consequently, the trial court properly found that the internal guidelines described in Exhibit K do not apply to the Project. The Duffs' reliance on Exhibit K is therefore misplaced and does not rebut the presumption that the easement is necessary.

{¶ 44} While Cross testified there was no siting study for the Project, a fair reading of the hearing testimony plainly indicates that a siting analysis was performed regarding which route should be selected to address Mount Sterling's growth. Cross testified she was the siting specialist for and had been working on the Project for a year. While she was not involved in the Project at the very beginning of the siting analysis, she had had several meetings and discussions with the team that had made initial decisions.

{¶ 45} Cross' testimony as well as that of Scott show that the feasibility of the Duffs' proposed route along their northern property line was studied but ultimately rejected because it would have placed the line in close proximity to several residences and a church and would have required two additional sharp turns which would have increased the cost of the Project by $200,000. Cross testified that AEP considered rebuilding the transmission line through Mount Sterling but rejected that option because it would have required the condemnation and removal of several residences and commercial buildings  Cross further testified that AEP considered rerouting the transmission line north of Mount Sterling but rejected that option as well because there was already a transmission line there. Furthermore, that route would have been longer than the reroute across the Duffs' property. Cross testified that the reroute ultimately selected was not perfect but was appropriate and the least impactful route.

{¶ 46} David Duff testified that while the Project itself was a public necessity, it was not necessary for AEP to reroute the transmission line across his property when

other less intrusive routes were available, such as the route he proposed along the northern border of his property. Duff testified that he had also suggested another route further south on his property; however, both proposed routes were rejected by AEP.

{¶ 47} "The appropriating agency has the discretion to determine the location and route of the land to be taken for public use, and, within reasonable and statutory limits, to determine the amount of land required." *Eschtruth Invest. Co.*, 2011-Ohio-3251 at ¶ 10. The existence of alternate routes or methods of implementation is not proof that a taking is unnecessary. *Id.*; *Ogle*, 2009-Ohio-5953 at ¶ 15. "Where two lines for an electric transmission line are possible[,] it is discretionary with the appropriating agency to select the route it will follow, and in the absence of fraud, bad faith, or gross abuse of discretion, such determinations will not be disturbed by the court." *Cincinnati Gas and Elec. Co. v. Davies*, 1st Dist. Butler Nos. CA 74-10-0086 and CA 74-10-0087, 1975 Ohio App. LEXIS 7474, *10 (June 30, 1975). "Evidence that another route is feasible is not sufficient to show that the grantee's selection constitutes bad faith, oppression or abuse of power." *Id.* at *10-11. Furthermore, "evidence that another location or configuration would serve the same public use and be less burdensome for the landowner would be relevant for the jury only in regard to the question of the compensation required for the taking." *Eschtruth Invest. Co.* at ¶ 10.

{¶ 48} The record shows that the Board, through surrogates, made a reasoned, good faith effort to determine the necessity for the appropriation before declaring it. It, therefore, made a reasoned and good faith effort to exercise the discretion given it by R.C. Chapter 163. *Cleveland Electric Illuminating Co. v. Scapell*, 44 Ohio App.2d 13, 16 (8th Dist.1975). At the hearing, the Duffs did not produce any evidence that AEP engaged in fraud, bad faith, or gross abuse of discretion in selecting the reroute across their property and in determining that the appropriation was necessary. As discussed

above, the testimony elicited at the hearing and relied upon by the Duffs does not rebut the presumption that acquiring the easement across their property was necessary for public use.

**{¶ 49}** Accordingly, because AEP passed a resolution of necessity, and because the Duffs failed to rebut the presumption that the appropriation was necessary, we find there is competent and credible evidence supporting the trial court's judgment in favor of AEP.

**{¶ 50}** The first and third assignments of error are overruled.

**{¶ 51}** Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND J., concur.