[Cite as *Columbia Gas v. Phelps Preferred Invests., L.L.C.*, 2022-Ohio-2540.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

COLUMBIA GAS OF OHIO, INC.,

    PETITIONER-APPELLANT,              CASE NO.  14-22-07

    v.

PHELPS PREFERRED INVESTMENTS, LLC,
                                   O P I N I O N

    RESPONDENT-APPELLEE.

Appeal from Union County Common Pleas Court
Trial Court No. 21-CV-0137

**Judgment Affirmed**

**Date of Decision:   July 25, 2022**

APPEARANCES:

    *Adam C. Smith* **for Appellant**

    *Andrew C. Clark and Richard T. Ricketts* **for Appellee**

**SHAW, J.**

{¶1} Petitioner-Appellant, Columbia Gas of Ohio, Inc. ("Columbia Gas"), appeals from a judgment entry of the Union County Court of Common Pleas dismissing Columbia Gas' petition in an action involving appropriation of easement rights.

Facts and Procedural Background

{¶2} In August 2020, the Ohio Power Siting Board ("Siting Board") approved Columbia Gas' Letter of Notification application "for the construction, operation, and maintenance of the Marysville Connector Pipeline Project" (the "Pipeline Project"), subject to two conditions which are not at issue in this appeal. (Petitioner's Ex. 7). According to the Siting Board's Opinion, Order, and Certificate, the Pipeline Project is a 4.78-mile natural gas pipeline route near Marysville, Union County.

{¶3} By a letter dated July 21, 2021, Columbia Gas sent Respondent-Appellee, Phelps Preferred Investments, LLC ("Phelps") a notice of intent to acquire an easement across Phelps' parcels of real property located in Union County for purposes of the project involving installation of the natural gas pipeline infrastructure. (Respondent's Ex. R). The pipeline route is on 1.7 miles of the Phelps' property. (Tr. at 168). Despite negotiations, the parties were unable to agree on the proposed easement rights.

{¶4} Accordingly, on August 30, 2021, Columbia Gas, a public utility, filed in the Common Pleas Court of Union County a verified petition for appropriation of easements rights on the real property owned by Phelps. The petition claimed that the Pipeline Project and acquisition of the easement rights are "necessary and for a public use" to construct, operate, and maintain the Marysville Connector Facility. (Doc. No. 2 at ¶ 38). The petition included among the exhibits a copy of the proposed easement and a copy of the Siting Board's August 27, 2020 Opinion, Order, and Certificate for the Pipeline Project.

{¶5} Phelps filed an answer objecting to the appropriation action. Phelps' answer raised ten specific denials to Columbia Gas' petition.

{¶6} On December 7, 2021, the trial court conducted a necessity hearing. At this hearing, both parties were given the opportunity to present testimony and evidence for and against their respective positions. Columbia Gas called two witnesses, Melissa Thompson, Director of Regulatory Policy for Columbia Gas, and Matthew Opfer, a Manager of Major Projects for Columbia Gas, through his work at NiSource. Phelps testified on its behalf by Doug Phelps (a member and manager of Phelps). The office manager of the law firm of Ricketts & Clark Co., LPA also testified and Opfer was called on cross-examination by Phelps.

{¶7} On February 8, 2022, the trial court issued a judgment entry finding the following three specific denials asserted in Phelps' answer have merit: "Excess

taking relating to pipeline specification;" "Excessive taking relating to blanket easement for valves and appurtenances;" and "Excessive taking as to width and duration of easement." (Doc. No. 44, Feb. 8, 2022 J.E. on Necessity Hearing, p. 1-2). The trial court's conclusions of law state that (1) the burden was upon Petitioner [Columbia Gas] to prove that the appropriation was taking no more than was necessary to promote the public; and (2) the Ohio Power Siting Board in failing to examine the applicable easement documents itself, failed to determine if the appropriation was taking only that which was necessary. (*Id.* at p. 3, citing *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799; *Ohio Power Co. v. Burns*, 4th Dist. Washington Nos. 20CA19, 20CA20, 20CA21, and 20CA22, 2021-Ohio-2714, *appeal not allowed*, 165 Ohio St.3d 1478, 2021-Ohio-4289, *reconsideration granted*, 165 Ohio St.3d 1543, 2022-Ohio-397.) As a result, the trial court concluded that Columbia Gas' petition should be dismissed pursuant to R.C. 163.09([G]).

{¶8} From this decision, Columbia Gas appeals, asserting the following assignments of error.

### Assignment of Error No. 1

**The Trial Court erred in failing to find in the Judgment Entry on Necessity Hearing (the "Judgment Entry") that Petitioner/Appellant Columbia Gas of Ohio, Inc., ("Columbia Gas") is not entitled to an irrebuttable presumption of necessity pursuant to R.C. 163.09(B)(1)(c), despite the Ohio Power Siting Board ("OPSB") approving Columbia Gas' Letter of Notification**

Application for the Marysville Connector Pipeline Project (the "Project"), which contained the easement terms Columbia Gas seeks to appropriate.

**Assignment of Error No. 2**

**The Trial Court erred in failing to find in the Judgment Entry that Columbia Gas is entitled to a rebuttable presumption of necessity pursuant to R.C. 163.09(B)(1)(b), despite Columbia Gas presenting evidence of necessity of the appropriation, despite considerable deference afforded to an appropriating public utility, and despite Respondent Phelps Preferred Investments, LLC's ("Phelps") failure to overcome Columbia Gas' presumption of necessity of the appropriation.**

**Assignment of Error No. 3**

**The Trial Court erred in finding in favor of Phelps in the Judgment Entry on Phelps' second specific denial that Columbia Gas is seeking excessive pipeline specifications, despite only Columbia Gas proffering evidence that such pipeline specifications are reasonably convenient or useful to the public.**

**Assignment of Error No. 4**

**The Trial Court erred in finding in favor of Phelps in the Judgment Entry on Phelps' third specific denial that Columbia Gas is seeking excessive "blanket" easement rights, despite only Columbia Gas proffering evidence that Columbia Gas' easement rights are limited to a 75′ easement corridor that is depicted by a professional surveyor and that such easement corridor is reasonably convenient or useful to the public.**

**Assignment of Error No. 5**

**The Trial Court erred in finding in favor of Phelps in the Judgment Entry on Phelps' fourth specific denial that Columbia Gas is seeking excessive rights regarding Columbia Gas' 25′ temporary construction easement because Columbia Gas is authorized to use that area after initial pipeline construction only**

**for limited work on the pipeline, despite only Columbia Gas proffering evidence that such rights are reasonably convenient or useful to the public.**

**Assignment of Error No. 6**

**The Trial Court erred by dismissing Columbia Gas' Petition in the Judgment Entry and by failing to hold a compensation hearing pursuant to R.C. 163.09(B)(2), regardless of how the Trial Court decided Phelps' specific denials.**

{¶9} Because the first through fifth assignments of error present related issues, we address them together.

*Standard of Review*

{¶10} "The interpretation and application of a statute is a matter of law that an appellate court reviews de novo." *Ohio Power Co.,* 4th Dist. Washington Nos. 20CA19, 20CA20, 20CA21, and 20CA22, 2021-Ohio-2714, at ¶ 45.  Additionally, "we review the trial court's decision on the extent of the take *de novo*, without any deference to the trial court's determination, as it is an issue of law."  (Italics sic.) *Ohio Dept. of Natural Resources v. Thomas*, 3d Dist. Mercer No. 10-16-05, 2016-Ohio-8406, ¶ 46.

*Statutory Framework*

{¶11} Pursuant to R.C. 163.021(A), "No agency[1] shall appropriate real property except as necessary and for a public use.  In any appropriation, the taking

---

[1] An "agency" includes "any corporation * * * that is authorized by law to appropriate property in the courts of this state."  R.C. 163.01(B), (C).

agency shall show by a preponderance of the evidence that the taking is necessary and for a public use." Importantly, when the affected property owner files an answer which consists of specific denials, the appropriation provisions in R.C. 163.09(B)(1) provide for a hearing on:

> any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation * * * . Upon those matters, the burden of proof is upon the agency by a preponderance of the evidence except as follows:
>
> * * *
>
> (b) The presentation by a public utility or common carrier of evidence of the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation.
>
> (c) Approval by a state or federal regulatory authority of an appropriation by a public utility or common carrier creates an irrebuttable presumption of the necessity for the appropriation.

**{¶12}** The Fourth Appellate District has explained the effect of such presumptions as follows:

> "[A] presumption shifts the evidentiary burden of producing evidence, *i.e.,* the burden of going forward, to the party against whom the presumption is directed; it does not effect the burden of proof, which remains the same throughout the case. Moreover, a rebuttable presumption does not carry forward as evidence once the opposing party has rebutted the presumed fact. Thus, once the presumption is met with sufficient countervailing evidence, it fails and serves no further evidentiary purpose. * * * [T]he case then proceed[s] as if the presumption had never arisen. (Citations omitted.)"

*Ohio Power Co.* at ¶ 46, quoting *Horsley v. Essman*, 145 Ohio App.3d 438, 444, 2001-Ohio-2557 (4th Dist.); *see also Hoyle v. DTJ Ent., Inc.*, 143 Ohio St.3d 197, 2015-Ohio-843, ¶ 24.

{¶13} Further, R.C. 163.09(B)(2) states that at the hearing, the necessity of the appropriation is a question for the trial court to determine.

*Legal Analysis*

A. The Presumption in R.C. 163.09(B)(1)(c)

{¶14} Columbia Gas contends that the trial court erred in failing to find that it is entitled to an irrebuttable presumption of necessity for the appropriation under R.C. 163.09(B)(1)(c) because the Siting Board, a state regulatory authority, approved the Pipeline Project. Columbia Gas further suggests that even if approval of the Pipeline Project alone does not trigger the irrebuttable presumption, it is entitled to the rebuttable presumption for the reason that the Siting Board approved the terms within the easement that it seeks to acquire in this case.

**1. The Ohio Power Siting Board**

{¶15} To obtain a certificate from the Siting Board to build a major utility facility, a company must submit an application that, inter alia: (1) describes the major utility facility and its location; (2) summarizes any environmental-impact studies that have been conducted; (3) explains the need for the facility; (4) states why the proposed location is "best suited for the facility." R.C. 4906.06(A)(1)-(4).

The Siting Board "shall not grant a certificate for the construction, operation, and maintenance of a major utility facility * * * unless it finds and determines all of the following:" the basis of the need for the facility; the nature of the probable environmental impact; that the facility represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of the various alternatives, and other pertinent considerations; and that the facility will serve the public interest, convenience, and necessity. R.C. 4906.10(A)(1)-(3), (6).

{¶16} As stated earlier, Columbia Gas received Siting Board regulatory approval for the construction, operation, and maintenance of the subject Pipeline Project. The certificate of approval notes adequate data was provided "to make the applicable determinations required by R.C. 4906.10," and that pursuant to R.C. Chapter 4906, a certificate of approval should be issued. (Petitioner's Ex. 7 at ¶ 61-62). One of the listed requirements in R.C. 4906.10 for the Siting Board to grant a certificate is "that the facility will serve the public interest, convenience, and necessity." R.C. 4906.10(A)(6).

{¶17} Columbia Gas in its brief states that the Siting Board "approved, among other things, the precise dimensions of the permanent easement and temporary construction easement; the location of the Pipeline; that Columbia Gas needs to acquire easements, including an easement on Phelps' property, before

beginning the authorized work on the Pipeline; and that Columbia Gas is authorized to construct, operate, and maintain the Pipeline." (Appellant's Brief at 12). Columbia Gas' brief then cites to testimony of Ms. Thompson who reviewed the Siting Board's certificate of environmental compatibility and public need for the Pipeline Project and testified that it constituted approval of the rights set forth in the easement at issue in this appropriation. *Id.*

{¶18} The Ohio Supreme Court has held that "[c]ourts shall apply heightened scrutiny when reviewing statutes that regulate the use of eminent-domain powers." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, at paragraph three of the syllabus. Further, courts have strictly construed the appropriation provisions of R.C. 163.01 et seq. against the governmental agency. *See, e.g., State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.,* 5th Dist. Licking No. 2019 CA 00039, 2020-Ohio-276, ¶ 20. Thus, "R.C. 163.09(B) states that the presumptions apply where the * * * state regulatory authority approves the appropriation." *Ohio Power Co.,* 4th Dist. Washington Nos. 20CA19, 20CA20, 20CA21, and 20CA22, 2021-Ohio-2714, at ¶ 51.

{¶19} We find persuasive the decision of the Fourth District Court of Appeals in *Ohio Power Co. v. Burns*, *supra.* The appellate court found the irrebuttable presumption in R.C. 163.09(B)(1)(c) inapplicable because the state

regulatory authority did not approve the actual easements being sought from the landowners. It reasoned that:

> **The irrefutable evidence is that the Siting Board and the Ohio Power Board did not review or approve the easements sought from the Landowners. Thus, the trial court erred in applying the irrebuttable presumption of the necessity for the proposed easements. The Siting Board made no findings about the appropriations at issue here. Because the Siting Board did not approve these appropriations, Ohio Power was not entitled to the irrebuttable presumption of the necessity for the proposed easements under R.C. 163.09(B)(1)(c).**

*Id.*

{¶20} Similarly, under the facts of this case, we find that the Siting Board was never provided with the proposed easement sought from Phelps. (Tr. at 91-92). The Siting Board did not review or approve the terms of the proposed easement in this case. Accordingly, Columbia Gas was not entitled to an irrebuttable presumption of the necessity of the appropriation, i.e. the proposed easement from Phelps, under R.C. 163.09(B)(1)(c).

B. The Presumption in R.C. 163.09(B)(1)(b)

{¶21} Columbia Gas also contends that the trial court erred in failing to find it is entitled to R.C. 163.09(B)(1)(b)'s rebuttable presumption of necessity for the appropriation and, therefore, erroneously placed the burden "upon the Petitioner to prove that the appropriation is taking no more than is necessary to promote the public." *See* Feb. 8, 2022 J.E., Conclusions of Law, No. 1, citing *Norwood v.*

*Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799. According to Columbia Gas, the pipeline will: (1) provide natural gas service to new industry and residential development; and (2) provide existing customers with increased capacity for reliable natural gas service. (Petitioner's Ex. 1 at p. 2).

**{¶22}** Here, the trial court determined, as an initial matter, that "[t]his project would benefit the community of Marysville and surrounding areas with an increase in available natural gas." (Feb. 8, 2022 J.E., Findings of Fact, No. 3). Further, as discussed above, one of the listed requirements in R.C. 4906.10 for the Siting Board to grant the approval certificate was "that the facility will serve the public interest, convenience, and necessity." R.C. 4906.10(A)(6). However, these broad conclusions regarding the Pipeline Project were insufficient to establish a rebuttable presumption of the necessity for the proposed easement under 163.09(B)(1)(b).

**{¶23}** The trial court determines at a R.C. 163.09(B) hearing "whether the entire appropriation was necessary; specifically whether the amount taken was excessive." *Octa v. Octa Retail, L.L.C.*, 12th Dist. Fayette No. CA2007-04-015, 2008-Ohio-4505, ¶ 43; *see Ohio Power Co. v. Duff*, 12th Dist. Madison No. CA2020-01-004, 2020-Ohio-4628, ¶ 35 ("breadth of easement" was a factor reviewed by trial court at a R.C. 163.09(B) hearing). "The trial court's role 'requires vigilance in reviewing state court actions for the necessary restraint,' which includes: (1) ensuring that the scope of the take is narrow so that 'the state takes no

more than that necessary' for the public use; and that the state (2) 'proceeds fairly;' (3) 'without bad faith;' (4) without 'pretext;' (5) without 'discrimination;' and (6) without 'improper purpose.' " *Ohio Power Co.,* 4th Dist. Washington Nos. 20CA19, 20CA20, 20CA21, and 20CA22, 2021-Ohio-2714, at ¶ 56, quoting *Norwood* at ¶ 69. Moreover, " '[a] court's independence is critical, particularly when the authority for the taking is delegated to another or the contemplated public use is dependent on a private entity. In such cases, the courts must ensure that the grant of authority is construed strictly and that any doubt over the propriety of the taking is resolved in favor of the property owner.' " (Citations omitted.) *Id.,* quoting *Norwood* at ¶ 71.

**{¶24}** Accordingly, what the record shows is that the trial court did review the extent of the taking (i.e., the terms of the easement). In other words, we find the trial court engaged in a scope of review of the proposed easement required under *Norwood* and R.C. 163.09(B) and properly found that the burden of proof is on Columbia Gas to show the necessity of the easement terms sought by Columbia Gas. *See id.* at ¶ 55 (finding the trial court erred in not reviewing each of the challenged easement terms and making a separate necessity finding).

**1. The Findings of the Trial Court related to the necessity of the appropriation**

**{¶25}** The easement sought by Columbia Gas seeks rights "to lay a pipeline subsurface on the premises hereinafter described, and to operate and maintain

without restriction or limitation, repair, and replace said pipeline without interruption to service, together with necessary valves and other necessary appurtenances on lands situated in the Townships of Jerome and Millcreek, Union County, State of Ohio, being the lands of [Phelps] as described in Exhibit 'A' attached hereto and made a part hereof." (Petitioner's Ex. 5). In particular, "[t]he pipeline laid pursuant to the terms and conditions of this easement shall be located within the limits of a fifty foot (50´) wide easement (the 'Permanent Easement Area') as shown on Exhibits B attached hereto and made part hereof." *Id.* Additionally, Columbia Gas seeks a temporary easement to "use an additional twenty-five feet (25´) of space adjoining said Permanent Easement Area (the 'Temporary Easement Area'), as shown on Exhibits B, only for the purpose of enabling the Company to initially construct the pipeline and to later alter, replace, and repair said pipeline and to conduct all activities incident thereto, including restoration or clean-up activities." *Id.* "The pipeline and ancillary valves and appurtenances shall be buried below plow depth so as not to interfere with the present use of the land." *Id.*

*a. Excessive taking relating to pipeline specification*

{¶26} Columbia Gas challenges the trial court's findings on the excessive taking, arguing that, given the considerable deference to which it is entitled as a public utility, the land rights contained in the easement it seeks to acquire are

reasonably convenient and useful to the public for purposes of construction, operation, and maintenance of the pipeline. Columbia Gas first challenges the trial court's finding of merit to Phelps' second specific denial, which claims Columbia Gas' easement must be limited to a 12-inch diameter natural gas pipeline. (*See* Doc. No. 15, p. 12-13).

{¶27} In support of its argument, Columbia Gas cites hearing testimony that having the ability to increase or decrease the size of the pipeline allows it to account for future operations and maintenance issues. Columbia Gas also cites testimony that it would not be feasible for this connecting pipeline or Columbia Gas' pipeline system to transport anything other than natural gas.

{¶28} " 'The "necessity" required in the exercise of the power of eminent domain does not require a showing of absolute necessity, but includes "that which is reasonably convenient or useful to the public." ' " *Ohio Power Co.,* 12th Dist. Madison No. CA2020-01-004, 2020-Ohio-4628, at ¶ 32. However, we resolve any doubt over the propriety of the easements in favor of the landowner on the necessity and extent of the easements. *Ohio Power Co.,* 4th Dist. Washington Nos. 20CA19, 20CA20, 20CA21, and 20CA22, 2021-Ohio-2714, at ¶ 59.

{¶29} Testimony at the hearing indicates Columbia Gas was required to specifically describe the Pipeline Project to the Siting Board including certain "required descriptors," which included details such as the class of pipe to be used,

the diameter of the pipe, the maximum operating pressure for the pipeline, and even the wall thickness of the pipe. (Tr. at 82-83). Specifically, the Letter of Notification application sought to construct a natural gas pipeline, consisting of construction of a 12-inch diameter, coated steel pipe and has a maximum operating pressure of 190 pounds per square inch gauge. (Petitioner's Ex. 1). The certificate granted by the Siting Board recognized the public need for the construction, operation, and maintenance of 4.78 miles of the 12-inch natural gas pipeline serving Union County. (Petitioner's Ex. 7). From that fact, as the trial court found: "Before the Siting Board a specific size pipe and specific materials to be conveyed were presented and approved." (Doc. No. 44, p. 2).

{¶30} The proposed easement sought by Columbia Gas seeks the right "to lay a pipeline subsurface on the premises." As the trial court found, and we agree, the easement allowed any size pipe and other substances than natural gas to be transported through the pipeline. The fact that the pipeline must be buried below plow depth and the dimensions of the easement cannot change is not dispositive. Rather, the fact is that "a specific size pipe and specific materials to be conveyed were presented and approved" by the Siting Board. (*Id.*)

{¶31} Notably, the hearing testimony discloses Columbia Gas conceded at the hearing it has not limited itself to natural gas in this easement. (Tr. at 94). And as also conceded during the hearing, Columbia Gas has no present or speculative

need to transport anything other than natural gas. *Id.* Additionally, testimony in the record indicates there was no present need to increase the size of the pipeline from 12 inches or to increase the maximum operating pressure beyond 190 pounds per square inch.

{¶32} Considering the proposed easement along with the testimony, the Siting Board never approved, and Columbia Gas never requested approval for, anything other than a 12-inch diameter natural gas pipeline. Thus, because the easement contains no restrictions as to the size pipe and substances that may be transported through the pipeline, the trial court properly found this proposed taking relating to the pipeline specifications to be an excessive taking.

*b. Excessive taking relating to blanket easement for valves and appurtenances*

{¶33} Columbia Gas next challenges the trial court's finding of merit to Phelps' third specific denial which claims Columbia Gas' easement was a "blanket easement" because it allows Columbia Gas to locate valves and other appurtenances anywhere on the Phelps' property. (*See* Doc. No. 15, p. 13-14). Columbia Gas' argument to the contrary is based on the language of the easement, the survey drawings attached as exhibits to the easement, and the Siting Board documents. (Appellant's Brief at 20).

{¶34} Specifically, the easement states Columbia Gas shall have the right "to operate and maintain without restriction or limitation, repair, and replace said

pipeline without interruption to service, together with necessary valves and other necessary appurtenances on lands * * *, being the lands of the Grantor [Phelps] as described in Exhibit 'A.' "  The easement then goes on to specify that the "Permanent Easement Area," "Temporary Easement Area," and "ATWS and Access Road Easement" are shown on Exhibits B (the survey drawings).  While the easement limits the placement of the pipeline to the permanent easement area, we note, as did the trial court, "[t]here was no restriction as to where the valves and appurtenances could be located."  (Feb. 8, 2022 J.E., p. 2).  In fact, other than specifically stating they shall be buried below plow depth, the easement does not limit the placement of valves and appurtenances to the permanent easement area, nor does it limit the placement of valves and appurtenances to any of the areas shown on Exhibits B.  Ms. Thompson testified the valves and appurtenances would need to be located within the permanent easement area or otherwise those valves and appurtenances would be of no use to the system nor the pipeline.  (Tr. at 64).  Beyond that, Ms. Thompson's testimony on cross-examination at the hearing acknowledged she was not aware that having such a restriction would impair Columbia Gas' ability to utilize this easement.  (Tr. at 96).  Thus, by its plain language, the easement is an unnecessarily broad "blanket easement" or excessive taking relating to placement of valves and appurtenances.

*c. Excessive taking as to width and duration of easement*

**{¶35}** Columbia Gas next challenges the trial court's finding of merit to Phelps' fourth specific denial, which claims that the permanent right to utilize the 25-foot "temporary easement" was an excessive taking—width and duration. (*See* Doc. No. 15, p. 14-16). Specifically, Columbia Gas argues it is entitled to the rebuttable presumption under R.C. 163.09(B)(1)(b) upon presenting evidence that utilizing the 25-foot temporary construction easement for purposes of altering, replacing, and repairing the pipeline after initial construction is reasonably convenient or useful to the public. In support of its argument, Columbia Gas relies on the testimony of Mr. Opfer that altering, replacing and repairing the pipeline after initial construction is operating and maintaining the pipeline. Columbia Gas also relies on his testimony that utilizing the 25-foot temporary construction workspace for altering, replacing, or repairing the pipeline is required to safely and reliably transport natural gas.

**{¶36}** Both the petition to appropriate and the record show that the Pipeline Project requires a 75-foot easement, comprised of a 50-foot permanent easement area and a 25-foot "temporary" easement area. The Siting Board Staff Report of Investigation specifically notes the temporary easement, and as stated, then, in the project description portion of the Siting Board's certificate of approval, the "Pipeline construction will occur within a 75-foot easement, 25-feet of which is

temporary, with the remainder being permanent." (Petitioner's Ex. 6, 7 at ¶ 25).

However, as the trial noted, the 25-feet of temporary easement was called a

"perpetual temporary easement" at the necessity hearing, and under the terms of the

proposed easement, it had no expiration date. Attached as exhibits to the easement

were survey drawings purporting to depict each of the proposed easement areas.

The "Temporary Easement Area" as shown on Exhibits B was indicated as a

"Perpetual Temporary Easement." Columbia Gas conceded at the hearing, through

its witness Ms. Thompson, that it could have included that terminology in its Letter

of Notification application to the Siting Board, but chose not to describe the

temporary easement as a "perpetual temporary easement." (Tr. at 90). Columbia

Gas' reliance upon testimony to indicate that the 75-foot corridor--a 50-foot

permanent easement area and 25-foot temporary perpetual construction easement

area, was needed for both initial construction, and operations and maintenance,

including altering, replacing, and repairing the pipeline, subsequent to initial

construction, is factually inconsistent with the easement labeled "temporary" on the

construction plans (Appendix B) filed as part of the Siting Board application.

{¶37} Also, factually inconsistent with Columbia Gas' application is the fact

that the 25-foot temporary perpetual easement is considered "temporary" based on

Ms. Thompson's explanation as well as that of Mr. Opfer that it imposes a limitation

as to when Columbia Gas is able to utilize the temporary easement after initial

construction. (Tr. at 63, 97, 132). Further, we note Columbia Gas' position is not consistent with the acknowledged fact that it would "be ideal" to have a 50-foot permanent easement and a 25-foot temporary easement in the event that Columbia Gas had to repair, replace or modify the pipeline and that while "it would make it more difficult," Columbia Gas would not be "incapable" of properly maintaining the pipeline with only 50 feet. (Tr. at 130, 140).

**{¶38}** The hearing testimony and the language of the easement plainly indicate that the terms of the proposed easement would allow Columbia Gas the ability to more broadly be able to construct, operate, and maintain the pipeline. Based upon our review of the record, we concur with the trial court's assessment of excessive taking as to width and duration of the easement. Thus, by the twenty-five foot perpetual temporary easement for all construction (not just initial construction) and continuous operation and maintenance of the pipeline encumbering the property, Columbia Gas sought to appropriate additional rights beyond the specifically stated terms of the authorized Pipeline Project, by removing any durational limitation on the "temporary easement." *See Springfield v. Gross*, 164 Ohio App.3d 1, 2005-Ohio-5527, ¶ 21 (concluding that the "failure to define the purpose of excess appropriations in definite and specific terms is fatal to the proposed appropriation").

**{¶39}** For these reasons, we conclude that Columbia Gas' first, second, third, fourth, and fifth assignments of error are overruled.

*Sixth Assignment of Error*

**{¶40}** Finally, Columbia Gas argues that the trial court erroneously dismissed its petition under R.C. 163.09(G) because it should have proceeded to hold a compensation hearing pursuant to R.C. 163.09(B)(2). Columbia Gas contends the trial court is required to narrow the easement by removing terms that are not deemed reasonably convenient or useful to the public and then proceed with the compensation hearing within sixty days from the date of the journalization of its determination.

**{¶41}** The first phase of the eminent-domain procedure provides for a hearing to rule on the property owner's denials and if the court rules in favor of the appropriating agency, the second phase proceeds to determine the amount of compensation owed to the property owner in a jury trial. *State ex rel. Bohlen v. Halliday*, 164 Ohio St.3d 121, 2021-Ohio-194, ¶ 2-3, citing R.C. 163.09(B)(1), (B)(2).

**{¶42}** R.C. 163.09(B)(2) provides in relevant part: "If, as to any or all of the property or other interests sought to be appropriated, the court determines the matters in favor of the agency, the court shall set a time for the assessment of compensation by the jury not less than sixty days from the date of the journalization

of that determination[.]" The provision also provides with one exception inapplicable here, "an order of the court in favor of the agency on any of the matters * * * shall not be a final order for purposes of appeal." R.C. 163.09(B)(2). But, R.C. 163.09(G) specifically provides that "[i]f the court determines the matter in the favor of the owner as to the necessity of the appropriation * * *, in a final, unappealable order, the court shall award the owner reasonable attorney's fees, expenses, and costs."

{¶43} In this case, because the trial court did not err in dismissing the petition and there is no remaining appropriation left to proceed to a compensation trial, the trial court's determination that R.C. 163.09(G) applied instead of R.C. 163.09(B)(2) is proper. Columbia Gas' sixth assignment of error should be overruled.

{¶44} Accordingly, we affirm the trial court's judgment dismissing Columbia Gas' petition.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**